977 P.2d 160

Michael AMANTIAD, Plaintiff–Appellant,

and

Oahu Transit Services, Inc., Plaintiff–Intervenor–Appellee,

v.

Christopher ODUM, John Doe 1–10, Doe Partnerships, Corporations, and/or Other Entities 1–10, Defendants–Appellees.

No. 21269.

Supreme Court of Hawai'i.

May 20, 1999.

**154**

R. Steven Geshell, Honolulu, for Plaintiff–Appellant Michael Amantiad.

Roy F. Epstein and Kathy M. Sarria, of Reid, Richards & Miyagi, Honolulu, for Plaintiff–Intervenor–Appellee Oahu Transit Services, Inc.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

The instant appeal arises from the circuit court's denial of plaintiff-appellant Michael Amantiad's Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)[1] motion to vacate the circuit court's August 26, 1997 order granting plaintiff-intervenor-appellee Oahu Transit Services, Inc.'s (hereinafter referred to as "OTS") motion to enforce settlement, after all parties, including defendant-appellee Christopher Odum, stipulated to dismiss the matter with prejudice.

On appeal, Amantiad essentially contends that the circuit court abused its discretion in denying his motion to vacate the order enforcing the settlement, because: (1) the circuit court lacked jurisdiction, insofar as the parties stipulated to dismiss the matter with prejudice and the matter was dismissed on July 1, 1996; (2) the circuit court lacked jurisdiction, insofar as the Director of Labor and Industrial Relations (hereinafter referred to as the "Director of Labor") retains original jurisdiction, pursuant to Hawai'i Revised Statutes (HRS) § 386–73 (1993), over a compromise, waiver, or "wash" of future workers' compensation benefits; (3) a proper evidentiary hearing on the settlement's validity was not conducted; and (4) Amantiad's due process rights, under the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution (1978), were violated, insofar as he lacked the advice and benefit of his workers' compensation counsel.

Because the dispositive issue on appeal is whether the circuit court lacked subject matter jurisdiction to hear OTS's motion to enforce settlement after all parties and claims were dismissed with prejudice, and because we hold that the circuit court lacked jurisdiction in this regard,[2] we reverse (1) the

---

1. HRCP Rule 60, entitled "Relief from Judgment or Order," provides in pertinent part:

 **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment....

2. Regarding Amantiad's second point of error on appeal, *see infra*, discussion section II.B. With respect to Amantiad's third point of error on appeal, because we hold *infra* that the circuit court lacked jurisdiction to hear OTS's motion to enforce settlement, we hold that the circuit court also lacked jurisdiction to conduct an evidentiary hearing on the validity of the settlement. Therefore, we need not address the merits of this issue.

 Amantiad's fourth point or error on appeal, that he has a constitutional due process right to have a workers' compensation attorney (not just any attorney) present during settlement negotiations, lacks merit. Finally, he appears to argue in his opening brief that the circuit court violated certain Canons of Judicial Conduct by failing to disqualify itself from the motion to enforce settlement, because it was the same court to aid in settlement negotiations. Inasmuch as Amantiad failed properly to allege this claim in a point of error on appeal, we need not address the merits of this issue.

circuit court's December 16, 1997 order denying Amantiad's motion to vacate and (2) the circuit court's August 26, 1997 order granting OTS's motion to enforce settlement.

## I. *BACKGROUND*

On February 3, 1993, at approximately 9:45 a.m., Amantiad, a bus driver for OTS, was servicing a bus stop on Kūhiō Avenue. Traveling in the same direction as Amantiad, Defendant Odum attempted to turn right onto Lewers Street in front of Amantiad's bus, from a lane immediately to the left of Amantiad. The right rear of Odum's vehicle struck Amantiad's bus. Based upon, *inter alia*, medical expenses and wage loss stemming from the February 3, 1993 accident, Amantiad filed a tort action against Odum on March 22, 1995, in the first circuit court.

Pursuant to HRS § 386–8 (1993) and Hawai'i Rules of Civil Procedure (HRCP) Rule 24, providing for intervention as of right, OTS moved to intervene as Amantiad's employer, on March 30, 1995. Amantiad filed a statement of no position on April 11, 1995, and the circuit court granted OTS's motion to intervene on April 25, 1995. OTS thereafter filed a complaint in intervention against Odum on April 27, 1995. Apparently, the matter was assigned to the Court Annexed Arbitration Program (CAAP); a CAAP arbitrator was appointed, and the arbitration was set for May 8, 1996. However, due to an ostensibly strong potential for settlement, the parties agreed to and engaged in a compressed settlement time line. With the aid of the circuit court, the parties engaged in settlement negotiations. An early settlement conference was set for and held on April 17, 1996; however, no settlement agreement was reached at that time. A second settlement conference was set for and held on May 2, 1996.

At the time of the May 2, 1996 settlement conference, OTS's workers' compensation lien totaled $52,540.40, representing $27,-667.80 in medical and indemnity payments and $24,873.60 in permanent partial disability benefits. At the May 2, 1996 settlement conference, Amantiad was represented by his "tort action" attorney, Melvin Agena; however, Stephen Hioki, his workers' compensation attorney, was not present.[3] The following exchange occurred at the May 2, 1996 hearing:

THE COURT: The purpose of this conference is to put a settlement on the record. Who will state the terms of the settlement?

MR. SAKAI: As the defendant in this case, I have agreed and believe the other parties have also agreed that my client will fund a settlement payable to Mr. Agena and his client in the amount of $25,000, and in addition pay an additional sum of $13,-000 [to] Mr. Epstein's's [sic] client by separate draft, and a workman's [sic] compensation 386–8 which have a separate indemnification paragraph to be signed by Mr. Amantiad, which will indemnify Mr. Odum for any and all claims brought by Mr. Amantiad, and separate paragraph by Mr. Epstein's's [sic] client to sign, which will indemnify any claims brought by or through OTS against my client, Mr. Odum, and that will be the end of this case on this global settlement.

THE COURT: Mr. Epstein?

MR. EPSTEIN: As to OTS and Michael Amantiad, it is agreed that in return for full releases of all claims OTS has to workers['] compensation benefits, the amounts of monies Mr. Amantiad receives will be—*he agrees that he will wash or waive his right to any future workman's [sic] compensation benefits*, be it medical or indemnity for any claims as relates to the February 3, 1993 work-related accident, and *that will be by separate document submitted to the Department of Labor.*

THE COURT: Mr. Agena, on behalf of plaintiff?

MR. AGENA: Mr. Epstein's last representation is in return for the consent to settle this case by the workman's compensation carrier.

One last thing on the indemnification agreement, it's properly stated by Mr. Sakai, but we will not indemnify Mr. Epstein's's [sic] worker's compensation.

---

**3.** The record reveals that Hioki was notified about the second settlement conference but did not attend. Hioki explained, by way of letter and affidavit, that he believed there was no reason for him to attend the settlement conference because he believed that the parties would not be discussing Amantiad's future workers' compensation benefits.

MR. SAKAI: *You are making a complete wash of Mr. Amantiad's claim, including reopening. So, in other words, he can never reopen this particular workers['] compensation claim.*

MR. EPSTEIN: *Foreclosed from any workers['] compensation claims as relates to the February 3, 1993 work-related accident.*

THE COURT: Mr. Agena?

MR. AGENA: *That is correct.*

MR. SAKAI: That he cannot reopen any of the credit he's—that you are owed under 386-8 is also waived.

MR. AGENA: *That is correct.*

MR. EPSTEIN: I guess waived or irrelevant actually.

THE COURT: Anything else we need to put on the record?

MR. SAKAI: I will not be a signator on the worker's [sic] compensation Department of Labor's separate release.

MR. EPSTEIN: That is correct.

THE COURT: Thank you very much, counsel.

(Emphases and brackets added.)

On May 24, 1996, Amantiad executed a "Release and Settlement Agreement" (hereinafter referred to as the "May 24, 1996 Agreement"), which provided:

KNOW ALL MEN BY THESE PRESENTS

That the undersigned MICHAEL S. AMANTIAD, for and in consideration of the sum of TWENTY–FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) to him paid by CHRISTOPHER ODUM, ALAMO RENT–A–CAR, INC. and THE CONTINENTAL INSURANCE COMPANY (hereinafter referred to as the "Releasees") and receipt of which is hereby acknowledged, has released, acquitted and discharged, and by these presents does for himself, his heirs, executors, administrators, and assigns, release, acquit and forever discharges the said Releasees, their respective heirs, executors, administrators, successors, and assigns, from and on account of any and all claims, liens, controversies, actions, causes of action, liability and liabilities, demands or damages of whatsoever name or nature, whether at law or in equity, in any manner arisen, including any and all claims or liens by other parties, including but not limited to any Workers' Compensation lien of OAHU TRANSIT SERVICES, INC., under the provisions of Chapter 386, Hawaii Revised Statutes, arising or to grow out of an and all incidents or matters from the beginning of the world to the date of these presents and thereafter relating in any way to an accident occurring on or about February 3, 1993 in the County of Honolulu, State of Hawaii, all as more specifically set forth in that certain lawsuit filed by Plaintiff MICHAEL S. AMANTIAD in the First Circuit [Court], State of Hawaii, designated as Civil No. 95–1011–03 on or about March 22, 1995.

IT IS DEFINITELY UNDERSTOOD AND AGREED that the foregoing payment is by way of compromise and to terminate any and all claims, liens, actions or suits for injuries, damages or expenses of whatsoever nature, known or unknown, in any way growing out of or which may hereafter in any way grow out of or be connected with said incident, including any and all claims or liens by other parties, including but not limited to the Workers' Compensation lien of OAHU TRANSIT SERVICES, INC., and is not an admission by the said Releasees of any liability whatsoever for injuries sustained by the undersigned or for any resulting damages to the undersigned. The undersigned understands that in accepting the foregoing consideration and executing this Release, it is specifically agreed that this release shall be a complete bar to all claims or liens, including but not limited to the Workers' Compensation lien of OAHU TRANSIT SERVICES, INC., for injury to the person of the undersigned of whatsoever name or nature resulting or to result from the said incident.

IT IS FURTHER UNDERSTOOD AND AGREED that this release shall operate as a joint tortfeasor release within the meaning of Sections 663–11 through 663–17 of the Hawaii Revised Statutes, and shall within the meaning of Section 663–14 of the Hawaii Revised Statutes, operate to reduce by the extent of the pro rata share

of any liability of Defendant CHRISTO-PHER ODUM, ALAMO RENT–A–CAR, INC. and THE CONTINENTAL INSURANCE COMPANY or by the amount of the consideration paid for this Release, whichever shall be greater, any damages, judgment, or award hereafter recovered or recoverable by Plaintiff MICHAEL S. AMANTIAD against any other tortfeasor by reason of the aforementioned incident, all as more particularly set forth in Civil No. 95–1011–03.

THE UNDERSIGNED DOES HEREBY STIPULATE AND AGREE, for the foregoing consideration, to indemnify, defend, and forever hold harmless the said Releasees, their respective heirs, executors, administrators, successors, and assigns, against loss or liability from any and all claims, liens, demands or actions that have been or may be hereafter at any time made or brought against the said Releasees, their respective heirs, executors, administrators, successors, and assigns, by the undersigned or by anyone acting on his behalf or holding by or through him or by anyone else, including any and all claims or liens by other parties, including but not limited to the Workers' Compensation lien of OAHU TRANSIT SERVICES, INC., for damages on account of or in connection with any injuries sustained or which may be sustained by the undersigned in consequence of the aforesaid incident; and the undersigned expressly agrees to defend the said Releasees, their respective heirs, executors, administrators, successors, and assigns, against any and all claims, liens, demands or actions that have been or may be instituted against the said Releasees, their respective heirs, executors, administrators, successors, and assigns, including but not limited to any Workers' Compensation lien of OAHU TRANSIT SERVICES, INC., on account of or in connection with any injury sustained or which may be sustained by the undersigned in consequence of the aforesaid incident.

Apparently, in conjunction with Amantiad's release, OTS executed a "Consent to Settlement Agreement and Release" (hereinafter referred to as the "Consent Agreement"),[4] providing:

WHEREAS, OAHU TRANSIT SERVICES, INC. (hereinafter "Employer/Carrier") have paid workers' compensation benefits to or on behalf of MICHAEL S. AMANTIAD and in consideration of a reimbursement of $13,000.00 pursuant to Section 386–8, *Liability of Third Person,* Hawaii Revised Statutes, Employer/Carrier consent to and approve the tort settlement of $25,000.00 payable to Michael S. Amantiad and do hereby release, indemnify, defend, and forever hold harmless CHRISTOPHER ODUM, ALAMO RENT–A–CAR, INC. and THE CONTINENTAL INSURANCE COMPANY and their respective successors, administrators, insurers and assignees from all claims, demands, damages, actions, causes of action or suits at law or in equity of whatsoever kind or nature that have been or may be hereafter at any time made or brought against Christopher Odum, Alamo Rent–A–Car, Inc. and The Continental Insurance Company, their respective heirs, executors, administrators, successors, and assigns, by the Employer/Carrier or by anyone acting on their behalf or holding by or through the Employer/Carrier arisen or arising out of an accident involving Michael S. Amantiad which occurred on or about February 3, 1993 on the Island of Oahu, as more specifically described in the Complaint filed March 22, 1995.

On July 1, 1996, pursuant to HRCP Rule 41(a)(1)(B), Amantiad, OTS, and Odum stipulated to dismiss with prejudice all claims and parties. Inasmuch as the parties filed a stipulation to dismiss, there was no judgment providing for the circuit court to retain jurisdiction for any reason.[5]

On April 8, 1997, however, OTS moved to enforce the "settlement agreement." In support, OTS attached several documents, including *inter alia:* (1) the May 24, 1996 Agreement and (2) an Amended Stipulated Compromise and Release Agreement (here-

---

4. OTS's Consent Agreement was signed but not dated.

5. *See infra* note 7.

inafter referred to as the "Amended Release Agreement"), which was not signed. The Amended Release Agreement provided for Amantiad's release, waiver, and/or "wash" of all future workers' compensation benefits and provided a signature line for Gary S. Hamada, who was designated on the Amended Release Agreement as an Administrator of the Disability Compensation Division of the Department of Labor and Industrial Relations (DLIR). The attached copy of the Amended Release Agreement was not signed by Hamada. OTS's ultimate request for relief in its motion to enforce settlement was

> that an order be issued requiring MR. AMANTIAD and his attorney, either Stephen Hioki or Melvin Agena, [to] sign the Amended Stipulated Compromise and Release Agreement in which MR. AMANTIAD agrees to waive his right to future worker's [sic] compensation benefits from the February 3, 1993 accident. Alternatively, OTS requests that this court issue an order invalidating the settlement agreement in that OTS' consent was improperly obtained.

On July 22, 1997, in opposition to the motion to enforce settlement, Amantiad filed a declaration of counsel, Frank M. Fernandez (who was newly hired), and an affidavit by Amantiad. Fernandez's declaration averred that Amantiad did not have his workers' compensation attorney present at the settlement conference, that Amantiad would not have settled his future workers' compensation benefits had Mr. Hioki been present, and that "Amantiad was confused and was at a loss" without Mr. Hioki. Amantiad averred essentially the same.

6. The motion came on for hearing on October 8, 1997. Although Amantiad apparently designated the transcript from the October 8, 1997 hearing with the circuit court, the hearing transcript was not transferred to the supreme court. Therefore, we are unable to review the transcript.

7. On April 14, 1998, we dismissed Amantiad's appeal for a lack of jurisdiction, because the stipulation to dismiss with prejudice as to all claims and parties, filed July 1, 1996, was not reduced to a final judgment in accordance with HRCP Rule 58 and *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 119–120, 869

■ The circuit court granted OTS's motion to enforce the settlement on August 26, 1997. On September 16, 1997, Amantiad moved pursuant to HRCP Rule 60(b) to vacate the circuit court's order granting OTS's motion to enforce settlement.[6] In his written pleadings, Amantiad argued in support of his Rule 60(b) motion that the circuit court lacked jurisdiction, because: (1) the Director of Labor retains original jurisdiction, pursuant HRS § 386–73 (1993), over a waiver or wash of future workers' compensation benefits; and (2) the matter was dismissed with prejudice and no appeal was taken. On December 16, 1997, the circuit court denied Amantiad's motion to vacate the August 26, 1997 order. Amantiad timely appealed.[7]

## II. *DISCUSSION*

A. *The Circuit Court Lacked Subject Matter Jurisdiction to Hear OTS's Motion to Enforce Settlement After all Parties Stipulated to Dismiss all Claims and Parties with Prejudice.*

### 1. *Standard of Review*

■ An appellate court reviews a circuit court's determination of an HRCP Rule 60 motion for an abuse of discretion. *See Island Ins. Co., Inc. v. Santos*, 86 Hawai'i 363, 366, 949 P.2d 203, 206 (App.1997) (citing *Richardson v. Lane*, 6 Haw.App. 614, 622, 736 P.2d 63, 69, *cert. denied*, 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987), *reh'g denied*, 484 U.S. 1037, 108 S.Ct. 764, 98 L.Ed.2d 781 (1988)).

■ "The existence of jurisdiction is a question of law that we review *de novo* under the right/wrong standard." *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997)

P.2d 1334, 1338–39 (1994), rendering the appeal of the December 16, 1997 order premature. On April 29, 1998, upon considering Amantiad's motion for reconsideration, filed April 24, 1998, we reinstated the appeal and reserved the jurisdictional issue for later determination. We now address this issue. We agree with Amantiad and hold that a separate judgment is neither required nor authorized, inasmuch as a plaintiff's dismissal of an action, by filing a stipulation of dismissal signed by all parties, is effective "without order of [the] court." *See* HRCP Rule 41(a). Therefore, we have jurisdiction to review the instant appeal.

(quoting *State ex. rel. Bronster v. Yoshina,* 84 Hawai'i 179, 183, 932 P.2d 316, 320 (1997)); *see also State v. Ontiveros,* 82 Hawai'i 446, 448, 923 P.2d 388, 390 (1996) (citation omitted). Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. *See Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of the City and County of Honolulu,* 86 Hawai'i 343, 348, 949 P.2d 183, 188 (App.1997) (citing *Wong v. Wong,* 79 Hawai'i 26, 29, 897 P.2d 953, 956 (1995)). When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. *See id.* A judgment rendered by a circuit court without subject matter jurisdiction is void. *See id.*

2. *When OTS Filed Its Motion to Enforce Settlement, the Circuit Court Lacked Subject Matter Jurisdiction.*

■ The dispositive issue in the instant appeal is whether the circuit court lacked jurisdiction to enforce an oral settlement, entered on the record before the circuit court, after all parties stipulated to dismiss with prejudice all claims and parties. Based upon the following, we hold that the circuit court lacked jurisdiction.

In *Gilmartin v. Abastillas,* 10 Haw.App. 283, 869 P.2d 1346 (1994), the Intermediate Court of Appeals (ICA) addressed a substantially similar issue. *Gilmartin* involved an action for specific performance on an option to purchase a condominium unit. Just before trial, the parties negotiated a settlement agreement and read its terms into the record. Approximately one month later, they executed a release and settlement agreement that was neither approved by the circuit court nor incorporated into their stipulated dismissal. The parties stipulated to dismiss the matter with prejudice. A disagreement thereafter arose with respect to unpaid lease rent, interest, and maintenance fees; however, in order to complete the closing on the condominium unit, the parties agreed to settle the issue at a later date and to set aside a sum of money in escrow to cover the disputed sum. After further disagreement, Gil-

martin moved the circuit court to enforce the specific terms of the settlement agreement and to award her the remaining escrow funds, plus attorneys' fees and costs. The circuit court summarily granted the motion. *See id.* at 285–86, 869 P.2d at 1348–49.

■ Upon review, the ICA reversed the circuit court, stating that

[a] dismissal of a lawsuit with prejudice is generally regarded as an adjudication on the merits of all issues that were raised or could have been raised in the pleadings, thus barring, on res judicata grounds, any subsequent litigation involving the same claims, *Land v. Highway Constr. Co.,* 64 Haw. 545, 551, 645 P.2d 295, 299, *recon. denied,* 64 Haw. 688 (1982), and terminating the trial court's jurisdiction over the lawsuit. *Hinsdale v. Farmers Nat'l Bank & Trust Co.,* 823 F.2d 993, 995 (6th Cir. 1987); *McCall–Bey v. Franzen,* 777 F.2d 1178, 1185 (7th Cir.1985).

*When an action is dismissed with prejudice as part of a settlement agreement which is subsequently breached, the trial court thereafter has no jurisdiction to enforce the settlement agreement unless a party to the agreement takes one of two courses of action.*

First, an independent action may be brought for specific performance of the settlement agreement. *Hinsdale,* 823 F.2d at 996; *Musifilm, B.V. v. Spector,* 568 F.Supp. 578, 581 (S.D.N.Y.1983); *Brigando v. Republic Steel Corp.,* 180 Ill.App.3d 1016, 1021–22, 129 Ill.Dec. 728, 536 N.E.2d 778, 782, n. 1, *cert. denied,* 127 Ill.2d 612, 136 Ill.Dec. 581, 545 N.E.2d 105 (1989).

Second, a motion to vacate the dismissal order and reopen the original proceedings may be filed. Unless the vacatur is first granted, however, no jurisdiction would exist in the court to enter any remedial orders in the case. *Hinsdale,* 823 F.2d at 996; *McCall–Bey,* 777 F.2d at 1186; *Harman v. Pauley,* 678 F.2d 479, 481 (4th Cir.1982); *Kelly v. Greer,* 334 F.2d 434, 436–37 (3d Cir.1964).

*Id.* at 289–91, 869 P.2d at 1349–50 (emphasis added); *accord Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (hold-

ing that a district court lacked jurisdiction and did not have "inherent authority" to enforce settlement where parties stipulated to dismiss the matter with prejudice). We agree with and hereby adopt the ICA's reasoning.

Because the parties in the instant case entered into a stipulation to dismiss with prejudice as to all parties and claims, which was filed on July 1, 1996, but no party either (1) moved to vacate the dismissal or (2) instituted a separate action for specific performance of the settlement, the circuit court lacked jurisdiction to enforce the oral settlement entered on the record. Consequently, the circuit court's August 26, 1997 order enforcing settlement is void. Therefore, the circuit court abused its discretion in denying Amantiad's September 16, 1997 HRCP Rule 60(b) motion to vacate the order granting OTS's motion to enforce settlement.

On this basis alone, we reverse (1) the circuit court's December 16, 1997 order denying Amantiad's motion to vacate and (2) the circuit court's August 26, 1997 order enforcing settlement—*i.e.*, forcing Amantiad to sign the Amended Release Agreement or, in the alternative, invalidating the May 24, 1996 Agreement. However, inasmuch as Amantiad also properly raised the issue of the circuit court's subject matter jurisdiction over a "wash" of future workers' compensation benefits and the circuit apparently concluded that it retained said jurisdiction, we are compelled to address this issue.

B. *The Director of Labor Retains Original Jurisdiction over all Controversies and Disputes arising under HRS Chapter 386.*

On May 2, 1996, through aid of counsel, Amantiad agreed, on the record before the circuit court, to "wash" his future workers' compensation benefits in return for $25,000, in a global settlement with Defendant Odum and OTS. Relying upon that promise, Odum paid $25,000 to Amantiad and $13,000 to OTS, extinguishing OTS's existing workers' compensation lien rights under HRS § 386–8. All parties thereafter stipulated to dismiss the action with prejudice.

Amantiad's promise or agreement to "wash" his future workers' compensation benefits in exchange for the global settlement of his civil tort action implicates a dangerous commingling of and glaring conflict between the Director of Labor's original jurisdiction under HRS § 386–73 (1993) and this court's well-established support and fostering of settlement. We therefore must turn to HRS Chapter 386 to determine whether a compromise or "wash" of future workers' compensation benefits falls within the Director of Labor's original jurisdiction under HRS § 386–73 and, consequently, assuming that the circuit court otherwise has jurisdiction, to determine whether the circuit court can enforce a settlement regarding such benefits, absent the Director's prior consent or approval.

1. *Statutory Interpretation*

"The interpretation of a statute is a question of law reviewable *de novo*.["] *Franks v. City & County of Honolulu*, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. HRS § 1–15(1)(1993). Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590

(1997) (internal citations, quotation marks, brackets, ellipses, and footnote omitted).

This court may also consider "the reason and spirit of the law, and the cause which induced the legislature to enact it[ ] . . . to discover its true meaning." *Id.* at 148 n. 15, 931 P.2d at 590 n. 15; HRS § 1–15(2) (1993).

Also, this court is bound to construe statutes so as to avoid absurd results. *Keliipuleole v. Wilson,* 85 Hawai'i 217, 222, 941 P.2d 300, 305 (1997). "A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable[,] impracticable . . . inconsisten[t], contradict[ory], and illogical[ ]." *Id.* at 221–22, 941 P.2d at 304–05 (original brackets and citation omitted) (brackets added).

*Frank v. Hawaii Planing Mill Found.,* 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) (some brackets added and some in original).

■ We must further note that

[o]ur reporters are replete with cases holding that Hawai'i's workers' compensation statute is remedial in nature. *See, e.g., Locations, Inc. v. Hawai'i Dept. of Labor & Indus. Relations,* 79 Hawai'i 208, 210, 900 P.2d 784, 786 (1995); *Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 425, 653 P.2d 420, 427 (1982); *Evanson v. University of Hawaii,* 52 Haw. 595, 483 P.2d 187 (1971). An equal number of cases have recognized that our workers' compensation statute has a beneficent purpose and should be afforded "liberal construction in favor of the employee, to fulfill the humanitarian purposes for which it was enacted." *Respicio v. Waialua Sugar Co.,* 67 Haw. 16, 18, 675 P.2d 770, 772 (1984). Indeed, since the supreme court's first look at Hawai'i's then new workers' compensation statute in 1916, analyses in these kinds of cases have been grounded on the humanitarian purposes premise. *See, e.g., Lawhead v. United Air Lines,* 59 Haw. 551, 559–60, 584 P.2d 119, 124–25 (1978); *DeFries v. Association of Owners,* 57 Haw. 296, 303–04, 555 P.2d 855, 860 (1976); *Ichijiro Ikoma v. Oahu Sugar Co.,* 23 Haw. 291, 295–96 (1916).

Nevertheless, we acknowledge that the rule of liberal construction in workers' compensation cases has boundaries. In a caveat on this point, the supreme court explained that " '[t]he rule of liberal construction cannot be strained to the point of extending it to employments [or employment benefits] not within its scope or intent.' " *Locations, Inc.,* 79 Hawai'i at 211, 900 P.2d at 787 (quoting *Florida Indus. Comm'n v. Schoenberg,* 117 So.2d 538, 541 (Fla.Dist.Ct.App.1960)).

*Survivors of Iida v. Oriental Imports, Inc.,* 84 Hawai'i 390, 397, 935 P.2d 105, 112 (App. 1997) (footnote omitted). Finally, this court has also stated "that 'statutes abrogating common law rights must be strictly construed[.]' " *Hough v. Pacific Ins. Co., Ltd.,* 83 Hawai'i 457, 463, 927 P.2d 858, 864 (1996) (citing *Fonseca v. Pacific Constr.,* 54 Haw. 578, 585, 513 P.2d 156, 160 (1973); *Burns Int'l Sec. Services v. Department of Transp.,* 66 Haw. 607, 611, 671 P.2d 446, 449 (1983) (explaining that "[w]here it does not appear there was a legislative purpose in superseding the common law, the common law will be followed").

### 2. *Compromise and Settlement*

■ We particularly note our longstanding support of compromise and settlement. As a general rule, a properly executed settlement precludes future litigation for its parties. *See AIG Hawaii Ins. Co. v. Bateman,* 82 Hawai'i 453, 458–59, 923 P.2d 395, 400–01, *amended in part,* 83 Hawai'i 203, 925 P.2d 373 (1996). Indeed, a settlement agreement

"is an agreement to terminate, by means of mutual concessions, a claim which is disputed in good faith or unliquidated. It is an amicable method of settling or resolving bona fide differences or uncertainties and is designed to prevent or put an end to litigation." 15A Am.Jur.2d *Compromise and Settlement* § 1 (1976).

We acknowledge the well-settled rule that the law favors the resolution of controversies through compromise or settlement rather than by litigation. *Dowsett v. Cashman,* 2 Haw.App. 77, 82–83, 625 P.2d 1064, 1068 (1981). Such alternative to court litigation not only brings finality to the uncertainties of the parties, but is con-

sistent with this court's policy to foster amicable, efficient, and inexpensive resolutions of disputes. In turn, it is advantageous to judicial administration and thus to government and its citizens as a whole. We agree with the policy and law of settlements which the Supreme Court of Arkansas succinctly sets forth in *Ragland v. Davis,* 301 Ark. 102, 106–107, 782 S.W.2d 560, 562 (1990) (citation omitted, emphasis added):

> *Courts should, and do, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties;* the consideration for such agreements is not only valuable, but highly meritorious. *Because they promote peace, voluntary settlements ... must stand and be enforced if intended by the parties to be final, notwithstanding the settlement made might not be that which the court would have decreed if the controversy had been brought before it for decision. Such agreements are binding* without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other.
>
> . . . .

A compromise or settlement agreement disposes of all issues the parties intended to settle. *In re Estate of Engels,* 10 Kan. App.2d 103, 692 P.2d 400 (1984). . . .

> . . . .

Having found the settlement to be valid and enforceable, the terms of the settlement would control. . . .

*Sylvester v. Animal Emergency Clinic of Oahu,* 72 Haw. 560, 565–71, 825 P.2d 1053, 1056–59 (1992) (emphases added); *see also Gossinger v. Association of Apartment Owners of the Regency of Ala Wai,* 73 Haw. 412, 423–24, 835 P.2d 627, 633–34 (1992); *Han v. Yang,* 84 Hawai'i 162, 167–68, 931 P.2d 604, 609–10 (App.1997).

With respect to a judgment by consent or an oral settlement entered on the record, the ICA has explained that

> courts have the general power of entering judgment by consent of the parties for the purpose of executing a compromise and settlement of the action. 47 Am.Jur.2d *Judgments* § 1080 (1969).

Although there is no case on point in Hawaii, the law of compromise and settlement and of judgment by consent is well-settled in other jurisdictions. For example, the Kansas Supreme Court has stated: *"It is an elemental rule that the law favors compromise and settlement of disputes and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it."* *Matter of Estates of Thompson,* 226 Kan. 437, 440, 601 P.2d 1105, 1108 (1979). The Washington Supreme Court said it even more tersely: "The law favors settlements and consequently it must favor their finality." *Haller v. Wallis,* 89 Wash.2d 539, 544, 573 P.2d 1302, 1305 (1978).

A compromise agreement, like other contracts, requires an offer and acceptance, consideration, and parties who have the capacity and authority to agree as they do. 15A Am.Jur.2d *Compromise and Settlement* § 7 (1976). A judgment or decree entered by consent of the parties is in the nature of a contract, approved by the court, and cannot be set aside except on grounds adequate to justify the rescission of a contract. *Nieminen v. Pitzer,* 281 Or. 53, 57, 573 P.2d 1227, 1228 (1978).

> . . . .

The Supreme Court of Colorado, quoting with approval from the case of *Hansen v. Ryan,* 186 S.W.2d 595 (Mo.1945), held:

> "In the administration of justice and the prompt dispatch of business, *courts must and do act upon the statements of counsel* and upon the stipulations of parties to pending causes. *Where the parties have voluntarily entered into a stipulation which appears fair and reasonable for the compromise and settlement of the issues of a pending cause and where the stipulation is spread upon the record with the consent and approval of the court,* as here, the parties are bound thereby and the court may, thereafter, properly proceed to dis-

*pose of the case on the basis of the pleadings, the stipulations and the admitted facts."*

*Goltl v. Cummings,* 152 Colo. 57, 380 P.2d 556, 559 (1963).

*Dowsett v. Cashman,* 2 Haw.App. 77, 82–83, 625 P.2d 1064, 1068 (1981) (emphases added); *accord Sylvester,* 72 Haw. at 566, 825 P.2d at 1056.

3. *A Compromise of Future Workers' Compensation Benefits Constitutes a Controversy or Dispute within the Director of Labor's Original Jurisdiction, under HRS §§ 386–8 and 386–73.*

 HRS Chapter 386 endows the Director of Labor with original jurisdiction over all controversies and disputes arising thereunder. In particular, HRS § 386–73 (1993) provides:

Unless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter. The decisions of the director shall be enforceable by the circuit court as provided in section 386–91. There shall be a right of appeal from the decisions of the director to the appellate board and thence to the supreme court subject to chapter 602 as provided in sections 386–87 and 386–88, but in no case shall an appeal operate as a supersedeas or stay unless the appellate board or the supreme court so orders.

When interpreting HRS § 386–73, this court has stated that, "[t]aken at face value, the foregoing would preclude original court action to settle controversies involving the workers' compensation law. It relegates the circuit court to a secondary role where workers' compensation is concerned—the enforcement of the Director's decisions." *Travelers Ins. Co. v. Hawaii Roofing, Inc.,* 64 Haw. 380, 384, 641 P.2d 1333, 1336 (1982). Furthermore, "[a] statute which provides for a thing to be done in a particular manner or by a prescribed person or tribunal implies that it shall not be done otherwise or by a different person or tribunal...." *Id.* at 387, 641 P.2d at 1338 (citing *State ex rel. Battle v. Hereford,* 148 W.Va. 97, 103, 133 S.E.2d 86, 90 (1963)).

 In contrast to the Director of Labor's jurisdiction under HRS § 386–73, Hawai'i circuit courts retain jurisdiction over an employee's claims against third-party tortfeasors,[8] pursuant to HRS § 386–8 (1993), which provides in pertinent part:

**Liability of third person.** When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

If the employee commences an action against such third person he shall without delay give the employer written notice of the action and the name and location of the court in which the action is brought by personal service or registered mail. The employer may, at any time before trial on the facts, join as party plaintiff.

If within nine months after the date of the personal injury the employee has not commenced an action against such third person, the employer, *having paid or being liable for compensation under this chapter, shall be subrogated to the rights of the injured employee.* Except as limited by chapter 657, the employee may at any time commence an action or join in any action commenced by the employer against such third person.

No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee. *The entire amount of the set-*

**8.** *See Hough v. Pacific Ins. Co., Ltd.,* 83 Hawai'i 457, 465–68, 927 P.2d 858, 866–69 (1996); *Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995); *Shimabuku v. Montgomery Elev. Co.,* 79 Hawai'i 352, 357–58, 903 P.2d 48, 52–53 (1995);

*cf. Iddings v. Mee–Lee,* 82 Hawai'i 1, 6, 919 P.2d 263, 268 (1996); *Travelers Ins. Co. v. Hawaii Roofing, Inc.,* 64 Haw. 380, 641 P.2d 1333 (1982).

*tlement* after deductions for attorney's fees and costs as hereinafter provided, *is subject to the employer's right of reimbursement for his compensation payments under this chapter* and his expenses and costs of action.

If the action is prosecuted by the employer alone, the employer shall be entitled to be paid from the proceeds received as a result of any judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the payment of such expenses and attorney's fee, the employer shall apply out of the amount of the judgment or settlement proceeds an amount sufficient to *reimburse the employer for the amount of his expenditure for compensation* and shall pay any excess to the injured employee or other person entitled thereto.

If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee there shall be applied out of the amount of the judgment or settlement proceeds, the amount of the employer's *expenditure for compensation,* less his share of such expenses and attorney's fee. On application of the employer, the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the employer's *expenditure for compensation,* less his share of such expenses and attorney's fee.

If the action is prosecuted both by the employee and the employer, in a single action or in consolidated actions, and they are represented by the same agreed attorney or by separate attorneys, there shall first be paid from any judgment for damages recovered, or settlement proceeds in case the action or actions be settled before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action or actions, together with reasonable attorney's fees based solely on the services rendered for the benefit of both parties where they are represented by the same attorney, and where they are represented by separate attorneys, based solely upon the service rendered in each instance by the attorney in effecting recovery for the benefit of the party represented. After the payment of such expenses and attorneys' fees there shall be applied out of the amount of the judgment for damages, or settlement proceeds an amount sufficient to *reimburse the employer for the amount of his expenditure for compensation* and any excess shall be paid to the injured employee or other person entitled thereto.

In the event that the parties are unable to agree upon the amount of reasonable litigation expenses and the amount of attorneys' fees under this section then the same shall be fixed by the court.

*After reimbursement for his compensation payments the employer shall be relieved from the obligation to make further compensation payments to the employee* under this chapter *up to the entire amount of the balance of the settlement or the judgment,* if satisfied, as the case may be, after deducting the cost and expenses, including attorneys' fees.

. . . .

If the special compensation fund has paid or is liable for any compensation under this chapter, the fund shall be entitled to all the rights and remedies granted an employer under this section; provided that the employer' right to reimbursement for

compensation payments and expenses under this chapter shall have priority.

(Emphases added.)

First, the plain language of HRS § 386–73 places all controversies or disputes arising under HRS Chapter 386 within the original jurisdiction of the Director of Labor. A claim for workers' compensation benefits, whether present or future,[9] arises under HRS Chapter 386 and is, therefore, within the original jurisdiction of the Director of Labor. Second, all references to an employer's right to payment under HRS § 386–8 are explained as "reimbursement" or payment for "expenditure for compensation." Therefore, HRS § 386–8 provides an employer with the right of intervention for existing lien rights—not future or potential lien rights.[10]

■ Further, in order to implement HRS Chapter 386, the Director of Labor has adopted administrative rules, pursuant to HRS § 386–72 (1993).[11] The rule corresponding to HRS § 386–8 is Hawai'i Administrative Rule (HAR) § 12–10–31 (1995), which provides:

> **Liability of third person.** (a) Should any action be filed, arbitration commenced, or claim be made to recover damages pursuant to section 386–8, HRS, the party or parties in interest shall within ten calendar days notify the director in writing and all other parties of interest with pertinent details as the action, arbitration, or claim continues.

(b) The party or parties of interest shall obtain written consent of both employer and employee and file with the director within thirty calendar days of execution a final copy of the claim-dispositive document, release, settlement, court order, waiver, dismissal, arbitration award, or judgment.

(c) *The director may hold a hearing at the director's discretion or on application of a party of interest to determine whether or not the employer has an obligation to make further compensation payments including reimbursements and credits against sums recovered from any third party.*

(Emphasis added.)

Pursuant to HAR § 12–10–31, the Director of Labor retains the discretion, and necessarily the jurisdiction, to determine whether or not the employer has an obligation to make further or future compensation payments to the employee. In light of this provision, it necessarily follows that a compromise or settlement of "further" or future workers' compensation benefits may be nullified or voided by the Director of Labor, irrespective of what the parties have agreed. Therefore, in construing HRS §§ 386–8 and 386–73 with HAR § 12–10–31, we hold that it would be illogical and absurd to permit parties to compromise such future obligations, without the Director of Labor's prior consent or approval.

Our conclusion today finds further support in HRS § 386–151 (1993),[12] which bestows upon the Director of Labor the fiduciary

---

9. *Cf.* HRS § 386–78(a) (Supp.1998) which provides that "[n]o compromise in regard to a claim for compensation pending before the director shall be valid unless it is approved by decision of the director as conforming to this chapter and made a part of the decision."

10. This section's reference to an employer's protection from future payments is only limited to the amount of the settlement. If the employee has future need for compensation, beyond the settlement amount, the employer may be liable for payment.

11. HRS § 386–72, entitled "Rule making powers" provides: "In conformity with and subject to chapter 91, the director of labor ... shall make rules, not inconsistent with this chapter, which the director deems necessary for or con-

ducive to its proper application and enforcement."

12. HRS § 386–151 provides in pertinent part that:

> (a) There is hereby created a fund to be known as the special compensation fund which shall consist of payments made to it as provided by law. The director of finance of the State shall be custodian of the fund, and *all disbursements therefrom shall be paid by the director of finance upon orders by the director of labor and industrial relations.*
>
> ....
>
> (c) The director shall appoint annually a certified public accountant to examine and audit all the books and records relating to the special compensation fund and shall advise the director as to the fund's solvency, including

obligation of administering and maintaining the special compensation fund.[13] For example, the instant record reveals that Amantiad's injury has been deemed a permanent partial disability (in light of OTS's payment of $24,873.60 in permanent partial disability benefits), implicating a potential need for future reliance upon the special compensation fund under HRS § 386-33.

In light of the Director of Labor's original jurisdiction under HRS § 386-73, the Director's discretion under HAR § 12-10-31, and the Director's fiduciary obligations under various provisions of Chapter 386, we hold that a settlement or compromise of future workers' compensation benefits constitutes a controversy or dispute within the original jurisdiction of the Director of Labor, under section 386-73. Furthermore, we hold that a settlement or compromise of future workers' compensation benefits cannot be valid or binding without the consent or approval of the Director of Labor. Therefore, assuming that the circuit court otherwise has jurisdiction to enforce the terms of a settlement agreement, the circuit court lacks jurisdiction to enforce a compromise or settlement of future workers' compensation benefits, absent the prior consent or approval of the Director of Labor.[14]

### III. CONCLUSION

Because the circuit court lacked subject matter jurisdiction to hear OTS's motion to

---

recommendations as to levies and charges provided for in section 386-152 and the required level of funding. . . .
(Emphasis added.)

13. For example, HRS § 386-3 (1993) provides that "[i]f an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or *the special compensation fund* shall pay compensation to the employee or the employee's dependents[.]" (Emphasis added.) HRS § 386-33 (1993), entitled "Subsequent injuries that would increase disability," also provides in part:

(a) Where prior to any injury an employee suffers from a *previous permanent partial disability* already existing prior to the injury for which compensation is claimed, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of employment, to result in a greater permanent partial disability or in permanent total disability or in death then weekly benefits shall be paid as follows:
(1) In cases where the disability resulting from the injury combines with the previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for not more than one hundred four weeks; *the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid out of the special compensation fund;* provided that in successive injury cases where the claimant's entire permanent partial disability is due to more than one compensable injury, the amount of the award for the subsequent injury shall be offset by the amount awarded for the prior compensable injury;

(2) In cases where the disability resulting from the injury combines with the previous disability to result in permanent total disability, the employer shall pay the employee for one hundred four weeks *and thereafter compensation for permanent total disability shall be paid out of the special compensation fund;* and
(3) In cases where the disability resulting from the injury combines with the previous disability to result in death the employer shall pay weekly benefits in accordance with sections 386-41 and 386-43 but for not more than one hundred four weeks; *the balance of compensation payable under those sections shall thereafter be paid out of the special compensation fund . . . .*
(Emphases added.)

Similarly, HRS § 386-56 (1993), which provides for payment from the special compensation fund in the case of default, states in part: "Where an injured employee or the employee's dependents fail to receive prompt and proper compensation and this default is caused through no fault of the employee, *the director shall pay the full amount of all compensation awards and benefits from the special compensation fund to the employee or dependent.*" (Emphasis added.)

14. This is in accord with the current practice of attorneys working in the area of workers' compensation law. The record reveals that OTS intended to submit the Amended Release Agreement to the DLIR for signature. OTS could have avoided the instant quandary by simply obtaining the Director's consent or approval prior to entering into settlement negotiations before the circuit court. Pursuant to HRS §§ 386-73 and 386-91 (1993), the circuit court would have had the authority to enforce the Director's decision in this regard. That being said, we decline to address whether the Release and Settlement Agreement and the Consent Agreement are valid and binding in the instant case.

enforce settlement, we reverse. (1) the circuit court's December 16, 1997 order denying Amantiad's motion to vacate the order enforcing settlement and (2) the circuit court's August 26, 1997 order granting OTS's motion to enforce settlement. We also hold that a settlement or compromise of future workers' compensation benefits constitutes a controversy or dispute within the original jurisdiction of the Director of Labor, pursuant to HRS §§ 386–73 and 386–8 and HAR § 12–10–31, and that the circuit court lacks subject matter jurisdiction to enforce such a compromise or settlement, absent the prior consent or approval of the Director of Labor.