53 P.3d 264

STANDARD MANAGEMENT, INC., Plaintiff,

v.

Benjamin Paul KEKONA, Tamae M. Kekona and North Shore Shuttle, Defendants.

Benjamin Paul Kekona and Tamae M. Kekona, Third–Party Plaintiff–Appellees,

v.

Paz F. Abastillas, aka Paz F. Richter, Third–Party Defendant– Appellant,

and

Robert A. Smith and Dale Moana Gilmartin, Third–Party Defendants.

No. 22750.

Intermediate Court of Appeals of Hawai‘i.

Feb. 28, 2001.

Reconsideration Denied March 21, 2001.

Robert A. Smith, Kaneohe, for third-party defendant-appellant.

Fred Paul Benco, Honolulu, for third-party plaintiffs-appellees.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Third–Party Defendant–Appellant Paz F. Abastillas aka Paz F. Richter (Abastillas) appeals the first circuit court's August 17, 1999 Final Judgment on Remand as to All Claims and All Parties, and the underlying Amended Stipulation for Dismissal with Prejudice (Amended Stipulation) of even date.

On appeal, Abastillas contends that the circuit court exceeded its jurisdiction in vacating the previous Stipulation For Dismissal With Prejudice of the Third–Party Complaint (the Stipulation), filed on December 10, 1998, and amending the same immediately after vacatur. Abastillas also argues that the circuit court abused its discretion in granting the Third–Party Plaintiffs–Appellees, Tamae M. Kekona and Benjamin Paul Kekona (collectively, the Kekonas), relief under Hawai‘i Rules of Civil Procedure (HRCP) Rule 60(b), because "they had no grounds for seeking relief under Rule 60(b)." We disagree with Abastillas' contentions and affirm the judgment, for the following reasons.

## I. BACKGROUND.

The Kekonas met and became involved with Abastillas and attorney Robert A. Smith (Smith), Abastillas' employer and "common-law husband," in 1988. That year, Abastillas and Smith began to assist the Kekonas in the sale of their shuttle bus business and, in 1989, the Kekonas agreed to sell their business to buyers introduced to them by Smith.

Whilst Smith drafted the stock sale documents, Abastillas induced the elderly, married couple to enter into a partnership with her corporation, Standard Management, Inc. (SMI), for the purposes of bidding on and operating a tram service at Hanauma Bay. Smith, SMI's legal counsel, drafted the partnership agreement and operating agreement for the new partnership. Almost from the moment they agreed to the partnership with SMI, the Kekonas were plunged into a morass of legal and financial disputes involving Abastillas, SMI and Smith, many of which continue to this day.[1]

This appeal is the latest contest in the original litigation between the Kekonas and the Abastillas/Smith/SMI triad that began in 1989, and stems, in part, from this court's decision in *Standard Management v. Kekona,* No. 18388, 87 Hawai‘i 263, 953 P.2d 1361 (Haw.App. Nov. 25, 1997) (mem.).

In 1989, SMI filed suit against the Kekonas, alleging unlawful ouster from the Hanauma Bay tram partnership. The Kekonas counterclaimed against SMI for breach of contract and filed a third-party complaint against Abastillas and Smith that alleged, *inter alia,* that the Kekonas were fraudulently induced into the partnership by the couple's intentional misrepresentations regarding their business and professional expertise.

In 1993, after a four-week trial, a jury rendered a special verdict in favor of the Kekonas on the complaint, the counterclaim and the third-party complaint.[2] The jury awarded the Kekonas damages in the total amount of $703,750. The damages included:

(1) $152,500 in special and general damages and attorneys' fees against SMI;

(2) $200,000 in general damages, $25,000 in punitive damages, and $56,250 in attorneys' fees against Abastillas; and

(3) $270,000 in general damages against Smith.

---

1. For example, pending suits among Standard Management, Inc. (SMI), Paz F. Abastillas aka Paz F. Richter (Abastillas) and/or Robert A. Smith (Smith) and Tamae M. Kekona and Benjamin Paul Kekona (collectively, the Kekonas) include *Kekona v. Abastillas,* Civ. No. 93–3974–10, and *Standard Management, Inc. and Abastillas v. Kekona,* Supreme Court No. 22611, currently under consideration by this court.

The parties were also involved in a series of now-completed actions, including *Abastillas v.*

*Furuya,* Civ. No. 92–0139–01, and *Abastillas v. Kekona,* 87 Hawai‘i 446, 958 P.2d 1136 (1998).

2. The jury found, in pertinent part, that Abastillas had voluntarily quit the partnership, that SMI had materially breached the operating agreement, that Abastillas had defrauded the Kekonas, and that Smith's negligence was the legal cause of damages sustained by the Kekonas.

SMI, Abastillas and Smith appealed the Revised Judgment entered upon the jury's verdict.

On November 25, 1997, we issued *Standard Management, Inc. v. Kekona*, No. 18388, 87 Hawai'i 263, 953 P.2d 1361 (Haw. App. Nov. 25, 1997) (mem.), partly affirming and partly vacating the September 2, 1994 Revised Judgment. In summary, we affirmed the $152,500 in damages and attorneys' fees awarded against SMI and the $25,000 in punitive damages awarded against Abastillas. However, we remanded for a new trial on the issue of general damages against Abastillas for fraud,[3] and for a new trial on the negligence claim against Smith. *Id.* at 27–28.

On March 18, 1998, the circuit court set the trial on remand for the week of November 30, 1998. Before trial started, however, the parties agreed to settle. The Kekonas agreed to accept $6,000 from Smith and $3,000 from Abastillas.

To settle the negligence claim against Smith, the Kekonas filed their Third–Party Plaintiffs Kekonas' Acceptance of Third–Party Defendant Robert A. Smith's Offer of Judgment. However, in their case against Abastillas, the Kekonas agreed to enter into the Stipulation, upon receipt of the $3,000 settlement payment.[4] The stipulation, in its entirety, read as follows:

> COME NOW the parties hereto, by and through their respective counsel, and hereby stipulate, pursuant to *Rule 41(a)(1)(B)*[5] of the Hawaii Rules of Civil Procedure, *that the Third–Party Complaint of BENJAMIN PAUL KEKONA and TAMAE M. KEKONA against PAZ F. ABASTILLAS, a/k/a PAZ F. RICHTER, is hereby dismissed with prejudice* . Counsel for all parties appearing in this action have signed this Stipulation for Dismissal With Prejudice.

(Emphases and footnote added.)

The parties filed the Stipulation on December 10, 1998. The filing did not include the terms of the settlement agreement. However, the parties did read the terms of the settlement agreement into the record at a proceeding held on December 2, 1998:

> [the Kekonas attorney, Fred Paul Benco (Benco) ]: The third-party plaintiffs will receive the sum of $3,000 from third-party defendant Abastillas on or by December 25th, 1998 in exchange for a dismissal with prejudice which will be signed by the attorneys and submitted to the Court. If the monies are not received by that time, then a judgment will enter in favor of the Kekonas against Ms. Abastillas for the $3,000.

A few weeks after the signing of the Stipulation, the Kekonas learned that Abastillas, through Smith, was claiming that the settlement encompassed the $25,000 punitive damages award we had affirmed on appeal. This was especially surprising to the Kekonas, given their understanding that the Stipulation settled only their general damages claim against Abastillas. Hence, in this appeal, the Kekonas maintain that it was never intended that they relinquish their $25,000 punitive damages judgment. In contrast, Abastillas claims "that she intended just the opposite: she was willing to settle only if that claim was given up through a Rule 41 stipulation for dismissal with prejudice."

On February 2, 1999, the Kekonas filed their Motion to Vacate Stipulation for Dismissal and/or for New Entry of Dismissal *Nunc Pro Tunc* and/or for Other Appropri-

---

3. We also vacated the portion of the Revised Judgment awarding the Kekonas attorneys' fees against Abastillas, and remanded this issue for redetermination after completion of the trial on remand. *Standard Management v. Kekona*, No. 18388, .87 Hawai'i 263, 953 P.2d 1361 (Haw. App., 1997) (mem.) at 2023.

4. Upon receipt of the $3,000 on December 10, 1998, the Kekonas' attorney, Fred Paul Benco (Benco), signed the Stipulation For Dismissal With Prejudice of the Third–Party Complaint (the Stipulation).

5. Hawai'i Rules of Civil Procedure (HRCP) Rule 41(a)(1)(B) (1999) provides, in relevant part:

 (a) *Voluntary Dismissal: Effect Thereof.*
 (1) BY PLAINTIFF; BY STIPULATION .... an action may be dismissed by the plaintiff without order of court ... (B) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the ... stipulation, the dismissal is without prejudice[.]

ate Relief (the Motion to Vacate). They brought the motion under various subsections of HRCP Rule 60(b), including subsection (6). In support of the motion, Benco, swore in his affidavit that

> at the very outset of the December 2nd meeting in chambers, I reiterated that this settlement discussion only concerned the issue of "general damages" due to the Kekonas, and my clients did not intend to and would not broaden the discussion into a settlement of the earlier judgments. Attorney Geshell [Abastillas' trial attorney] again agreed, expressly stating that he "was hired only to try or settle this general damages claim, or what I would term a special damages claim," or words to that effect.

Further, during the hearing on the Motion to Vacate, Benco stated that

> there was no discussion of the $25,000 punitive damages, nor was that part of the bargain for consideration in the Court's chambers. And, in fact, that's borne out almost conclusively by the fact that if Miss Abastillas didn't pay the $3,000 by Christmas day of '98, then the judgment for $3,000 would enter.
>
> Why not, Your Honor, a judgment for $28,000? I think that is almost conclusive of what our argument is here.

While the declaration of Abastillas' trial attorney, Richard Steven Geshell (Geshell),[6] regarding the settlement discussion in chambers may be construed as a contradiction of Benco's sworn statement,[7] Geshell did not dispute Benco's statement that the $25,000 in punitive damages was never discussed, let alone made a part of the bargain. Instead, in her memorandum opposing the Motion to Vacate, and at the hearing on the motion, Abastillas relied primarily upon the premise that the Stipulation, by dismissing the third-party complaint against her, had the legal effect of disposing of both the remanded general damages issue and the affirmed punitive damages judgment. Consequently,

Abastillas opposed the Motion to Vacate on several grounds:

> (1) The Court lacks jurisdiction to enforce, modify, or rescind the settlement where the case has been dismissed with prejudice; (2) Kekonas have not established any grounds for the relief sought under Hawaii Rules of Civil Procedure (HRCP) Rule 60(b)(1), (3), (5), and/or (6); (3) Kekonas' authorities are distinguishable; (4) The settlement agreement has been fully performed; (5) Kekonas cannot obtain relief under HRCP Rule 60(b)(6) where they also seek relief under HRCP Rule 60(b)(1-5); and (6) where the dismissal is final, Kekonas have not shown extraordinary circumstances preventing them from appealing the dismissal with prejudice.

Both sides filed extensive briefs on the Motion to Vacate. Both sides presented oral argument at the March 3, 1999 hearing on the motion. After reviewing the briefs and hearing the parties' arguments, the circuit court orally granted the motion. The circuit court explained the rationale for its ruling, as follows:

> All right. The Court is going to use as its base for its ruling, ... the Intermediate Court of Appeals' decision.
>
> Mr. Geshell talks about the Kekonas wanting to fragment out the issues, and the Court finds that the issues were fragmented because the Intermediate Court of Appeals had affirmed the revised judgment in all respects, other than what was remanded to the circuit court, and it was fragmented in that manner.
>
> One of the issues that was fragmented out, and the Court agrees with Mr Geshell, is that unless there are—there is liability, there can be no punitive damages.
>
> But if one looks at the Intermediate Court of Appeals' decision, the remand for a new trial on any claim was on a claim against Mr. Smith. It was not a claim against Ms. Abastillas.

---

**6.** On appeal, Abastillas is represented by Smith.

**7.** Geshell declared that

> [o]n December 2, 1998, there was no discussion with [Benco] nor with [the circuit court]

about any damage amount or components of the damages in the settlement negotiations. *The only discussion was about settling the case set for jury trial that day.*
(Emphasis added.)

And as to Ms. Abastillas the Intermediate Court of Appeals affirmed on liability, affirmed on punitive damages, but only remanded the case for the discreet (sic) issue of general damages, and that was the only issue before this Court. The punitive damages issue was affirmed and there has been a judgment as to punitive damages.

Therefore, the Court finds that in answer to Mr. Gesehll's question that it's hard to know what the Kekonas were thinking, common sense as one applies it to the issue before the Court is that the only thing that the Kekonas were discussing and the only matter before this Court was the issue of general damages.

In the course of its exegesis, the circuit court "applie[d] the standard of common sense[,]" and thereupon concluded that "[i]t makes no sense for someone to give up a judgment in an appellate court of $25,000 to settle for 3. That makes no sense."

The circuit court also addressed the matter of its jurisdiction over the motion:

And, last, the Court has not entered judgment. I was looking to see if the Court's recall of the case is correct. There's been an agreement by the parties, but there still has been no judgment entered on the issue of the settlement as to the general damages award. And this Court still retains jurisdiction in this matter to correct any mistake or any—to make any finding so as to comport with fairness and a clear understanding between the parties.

Finally, the circuit court delineated the post-vacatur relief it was ordering:

And so the Court grants the motion to have the matter corrected to reflect that the settlement is as to the general damages issue.

On August 17, 1999, the parties filed the Amended Stipulation. In relevant part, it read:

COME NOW the parties hereto, by and through their respective counsel, and hereby stipulate, pursuant to Rule 41(a)(1)(B) of the Hawaii Rules of Civil Procedure, that the claim for "general damages" contained in the Third–Party Complaint of BENJAMIN PAUL KEKONA and TAMAE M. KEKONA against PAZ F. ABASTILLAS aka PAZ F. RICHTER, is hereby dismissed with prejudice. This Stipulation shall in no wise affect, diminish, or release the Kekonas' judgment for punitive damages of $25,000 against Third–Party Defendant Paz F. Abastillas contained in that certain Judgment first filed on December 17, 1993, and said Judgment shall remain in full force and effect.

Thereupon, the circuit court entered its Final Judgment on Remand as to all Claims and All Parties. That same day, Abastillas filed notice of this timely appeal.[8]

## II. STANDARDS OF REVIEW.

### A. Jurisdiction.

■ "The existence of jurisdiction is a question of law that we review *de novo* under the right/wrong standard." *Amantiad v. Odum*, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999) (citations and internal quotation marks omitted).

### B. HRCP Rule 60(b) Motions.

■ "An appellate court reviews a circuit court's determination of an HRCP Rule 60 motion for an abuse of discretion." *Id.* (citations and internal quotation marks omitted). "Generally, to constitute an abuse [of discretion] it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Coyle v. Compton*, 85 Hawai'i 197, 209, 940 P.2d 404, 416 (App.1997)

8. The question of waiver arises when we consider that Smith, on behalf of Abastillas, signed the Amended Stipulation for Dismissal With Prejudice (Amended Stipulation) that she now appeals. We also observe, however, that the circuit court's order granting the Third–Party Plaintiffs Kekonas' Motion to Vacate Stipulation for Dismissal and/or For New Entry of Dismissal *Nunc Pro Tunc* and/or For Other Appropriate Relief (the Motion to Vacate) ordered that the Amended Stipulation be filed in the form that Smith signed. We have no explanation why the circuit court did not simply enter the final judgment alone, as it contained all the provisions necessary to clarify and amend the Stipulation.

(citation and internal quotation marks omitted).

## III. DISCUSSION.

### A. Jurisdictional Issues.

Essentially, Abastillas argues that the circuit court "had jurisdiction only to deny the motion or else vacate the stipulation, undo the settlement, *and reset the case for trial.*" (Emphasis in the original.). She contends that "[b]y vacating [the Stipulation] *and amending it*, [the circuit court] exceeded [its] jurisdiction." (Emphasis in the original; titular typesetting omitted.). We disagree.

 Generally, a trial court lacks continuing jurisdiction to settle disputes arising out of a settlement agreement that produced a stipulation to dismiss the underlying action with prejudice. *Amantiad*, 90 Hawai'i at 159–60, 977 P.2d at 167–68; *Gilmartin v. Abastillas*, 10 Haw.App. 283, 289, 869 P.2d 1346, 1349 (1994). The trial court may, however, gain jurisdiction over such disputes through either of the following means:

First, an independent action may be brought for specific performance of the settlement agreement.

Second, a motion to vacate the dismissal order and reopen the original proceedings may be filed. Unless the vacatur is first granted, however, no jurisdiction would exist in the court to enter any remedial orders in the case.

*Amantiad*, 90 Hawai'i at 159, 977 P.2d at 167 (adopting and quoting the reasoning of *Gil-*

*martin,* 10 Haw.App. at 289–90, 869 P.2d at 1349–50) (internal citations, block quote format and footnote omitted). As we reasoned in *Gilmartin,*

generally, the interests of judicial economy would be better served if the original trial judge, who is already familiar with the facts of the case, were allowed to resolve any controversies arising out of a settlement agreement negotiated by the parties.

*Id.* at 295, 869 P.2d at 1352. We held, accordingly, that

if a trial court vacates a prior dismissal order, it has inherent authority to enforce the terms of a valid underlying settlement agreement, as long as the court would have had jurisdiction to enforce the agreement in an original cause of action. We thus decline to adopt a requirement that a settlement agreement be approved and incorporated into the order of dismissal, in order for the court to enforce the agreement.

*Id.* In this connection, we noted that "[t]he authority for filing a motion to vacate an order of dismissal [upon a stipulated dismissal] is HRCP Rule 60(b)(6), which provides, in pertinent part[, that] ... '[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time[.]' " *Id.* at 289 n. 3, 869 P.2d at 1349 n. 3 (internal block quote format omitted).[9]

9. Hence, Abastillas' second point on appeal, that the Kekonas "had no grounds for seeking relief under Rule 60(b)[,]" has no merit. We therefore confine the remainder of our discussion to her first point on appeal.

By the same token, it appears that the circuit court stated an incorrect basis for exercising jurisdiction over the Motion to Vacate. The circuit court reasoned that, because it had not entered a final judgment in the case, it retained continuing jurisdiction over the case, including the motion.

However, the stipulation, executed by the parties pursuant to HRCP Rule 41(a)(1)(B), does not require court approval or order. HRCP Rule 41(a)(1)(B) ("an action may be dismissed by the plaintiff without order of the court ... by filing a stipulation of dismissal signed by all parties who have appeared in the action"); *see also* 9 Charles

Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2363 at 270–71 (1995). It is regarded as a final adjudication on the merits and deprives the trial court of jurisdiction over the dismissed lawsuit, *Gilmartin v. Abastillas*, 10 Haw.App. 283, 288–89, 869 P.2d 1346, 1349 (1994), and hence obviates the need for a final judgment terminating the lawsuit. The circuit court's continuous jurisdiction over the case therefore ended with the stipulation to dismiss. It had jurisdiction over the Motion to Vacate solely by virtue of HRCP Rule 60(b)(6). *Id.* at 289 n. 3, 869 P.2d at 1349 n. 3.

However, "where the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling." *Kawamata Farms v. United Agri Products*, 86 Hawai'i 214, 251, 948 P.2d 1055, 1092 (1997) (citation and internal quotation marks

■ In this case, the Kekonas moved to vacate the stipulation to dismiss, instead of instituting a separate action. They based the Motion to Vacate upon various subsections of HRCP Rule 60(b), including subsection (6). Hence, under *Amantiad* and *Gilmartin*, the circuit court had jurisdiction and the "inherent authority" to resolve the controversy over the settlement agreement. *Amantiad*, 90 Hawai'i at 159, 977 P.2d at 167; *Gilmartin*, 10 Haw.App. at 289–90, 869 P.2d at 1349–50.

■ Abastillas nevertheless challenges the circuit court's authority to grant relief in the form of a clarification and amendment of the stipulation. In support of her challenge, Abastillas cites *Kawamata Farms v. United Agri Products*, 86 Hawai'i 214, 948 P.2d 1055 (1997), which noted that "relief under [Federal Rules of Civil Procedure] Rule 60(b)(3), the federal equivalent of HRCP Rule 60(b)(3), is available only to set aside a prior order or judgment; a court may not use Rule 60 to grant affirmative relief *in addition to* the relief contained in the prior order or judgment." *Id.* at 256, 948 P.2d at 1097 (citations and internal quotation marks omitted) (emphasis added).

As quoted, however, *Kawamata Farms* addressed a HRCP Rule 60(b)(3) motion. That motion sought additional sanctions for discovery fraud and misconduct on the part of the opposing parties.[10] Here, we address a HRCP *Rule 60(b)(6) motion to set aside a stipulation to dismiss in order to clarify the terms of the underlying settlement agreement*. While correctly stating the general rule cited in *Kawamata Farms*, Abastillas nevertheless misapplies it to this case, which

is governed instead by *Amantiad* and *Gilmartin*.

Even if we ignore, *arguendo*, the obvious apples-and-oranges defect in Abastillas' argument and assume, again *arguendo*, that she correctly characterizes the circuit court's clarification and amendment of the stipulation as "affirmative relief," such relief was hardly "in addition to" the relief implicit in the original stipulation.

The relief granted by the circuit court was, in essence, the construction of the scope of the stipulation and its underlying settlement agreement. Resolving that issue required no additional relief beyond what was intended by the parties and provided for by their agreement. The circuit court's clarification and amendment of the stipulation simply made explicit what was intended under the original stipulation. Such relief finds no analogy in *Kawamata Farms*.

## B. Procedural Issues After Vacatur.

Abastillas also argues that the circuit court exceeded its jurisdiction when, upon vacatur, it clarified and amended the stipulation instead of resetting the case for trial of the matter. Abastillas characterizes the issue as one of jurisdiction. However, once the circuit court had granted vacatur pursuant to HRCP Rule 60(b)(6), the jurisdictional question was resolved—i.e., vacatur vested jurisdiction in the circuit court. *Amantiad*, 90 Hawai'i at 159, 977 P.2d at 167; *Gilmartin*, 10 Haw.App. at 289–90, 869 P.2d at 1349–50.

Abastillas' argument is therefore one of procedure, not jurisdiction. As we observed in *Gilmartin*,

omitted). Its incorrect rationale notwithstanding, the circuit court had jurisdiction over the Motion to Vacate.

10. It is also important to note that, despite its enunciation of the general rule prohibiting the use of HRCP Rule 60 to grant affirmative relief in addition to that contained in the prior order or judgment, the Hawai'i Supreme Court in *Kawamata Farms v. United Agri Products*, 86 Hawai'i 214, 948 P.2d 1055 (1997), affirmed the trial court's grant of such relief, under HRCP Rule 60(b)(3), to rectify egregious discovery fraud and misconduct.

Abastillas also cites *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381, 114 S.Ct.

1673, 128 L.Ed.2d 391 (1994), for the proposition that the federal district courts lack jurisdiction and do not have "inherent authority" to enforce settlement where the parties have stipulated to dismiss the matter with prejudice. This proposition may be apposite for the federal courts, which are courts of limited jurisdiction. Enforcement of a settlement of the original federal question (for example) becomes a contract matter which the federal courts may not consider absent an independent basis for jurisdiction. The Hawai'i circuit courts, on the other hand, are courts of general jurisdiction. *See also Gilmartin*, 10 Haw.App. at 293 n. 4, 869 P.2d at 1351 n. 4.

[i]n the event that Plaintiff should file a motion to vacate the Stipulated Dismissal ..., two issues may arise if vacatur is granted: (1) the scope of the trial court's authority to enforce the Settlement Agreement; and (2) the procedural requirements for conducting the enforcement proceedings.

*Id.* at 293, 869 P.2d at 1351. We have addressed, *supra*, the issue of the scope of the circuit court's authority. We now address the procedure the circuit court utilized, post-vacatur.

Specifically, Abastillas objects to the fact that the circuit court clarified and amended the stipulation immediately after it vacated the stipulation. The procedural question thus presented is whether the circuit court acted properly when it granted post-vacatur relief to the Kekonas without conducting an evidentiary hearing or a new trial.[11]

Abastillas cites *Gilmartin* for the proposition that "a dispute over the settlement agreement [cannot] be resolved summarily, but [can] only be resolved in a proof hearing or trial." Abastillas' reading of *Gilmartin* would create, however, a blanket requirement of a separate proceeding following vacatur, where no such indiscriminate mandate was intended. Abastillas' reading is wholly recumbent upon our observation in *Gilmartin,* that

[a] motion to enforce a disputed settlement agreement is treated as a motion for summary judgment. A motion for summary judgment should not be granted where there is a factual question as to the existence, validity, and terms of the alleged settlement agreement, and where such a

dispute exists, a trial or an evidentiary hearing to resolve the dispute is required. *Id.* at 296, 869 P.2d 1346, 869 P.2d at 1352 (internal citations omitted). We then pointed out, however, that "[i]n the instant case, the record indicates sufficient evidence of factual disputes to warrant an evidentiary hearing." *Id.* Clearly, we intended no blanket requirement of a separate proceeding.[12]

 Instead, *Gilmartin* implies that, absent any factual question regarding the "existence, validity, and terms of the alleged settlement agreement," *id.*, a separate proceeding is unnecessary. It follows that, in a case in which no factual question exists, the circuit court has jurisdiction to summarily order relief after vacating a stipulation for dismissal.[13]

Abastillas insists that "[a]t a minimum there is a factual dispute which prohibited [the circuit court] from re-writing the parties' bargain the way that the Kekonas wanted it." Specifically, Abastillas argues that a factual question existed as to the respective intentions of the parties to the settlement agreement—that the parties failed to have a "meeting of the minds" as to all essential terms of the agreement, hence no binding contract was formed.

Our review of the record indicates, however, that no such factual question existed. Further, it is apparent from the record that Abastillas' contention, "that the parties understood the settlement differently in a most material aspect[,]" is, at best, disingenuous.

Inasmuch as a "voluntary dismissal by agreement of the parties is like a contract ..." 24 Am.Jur.2d Dismissal § 104 at 92–93 (1998), we apply contract principles to determine whether the record before the circuit

---

11. We observe, however, that the parties extensively briefed the Motion to Vacate, and were afforded ample opportunity to argue, at the hearing on the motion, not only the issue of vacatur, but also the issue of remedy, before the circuit court vacated the Stipulation and issued its clarification and amendment in the form of the Amended Stipulation.

12. Because the *Gilmartin* court ultimately held that the trial court did not have jurisdiction to enforce the settlement agreement absent vacatur (no predicate HRCP Rule 60(b)(6) motion to vacate was brought in *Gilmartin* ), its discussion

regarding the procedure for addressing post-vacatur relief is, of course, dictum. *Gilmartin,* 10 Haw.App. at 292–93, 869 P.2d at 1350–51.

13. We note that in *Amantiad v. Odum,* 90 Hawai'i 152, 977 P.2d 160 (1999), the Hawai'i Supreme Court adopted this court's reasoning in *Gilmartin* regarding the circumstances in which a circuit court may gain jurisdiction over an action previously dismissed under HRCP Rule 41. *Id.* at 159–60, 977 P.2d at 167–68. However, *Amantiad* did not reach the *Gilmartin* discussion regarding procedures to be utilized after vacatur.

court showed, without any issue of material fact, that a binding settlement was in fact formed upon the mutual assent of both parties.

■ In Hawaiʻi, "[t]he existence of mutual assent or intent to accept is determined by an objective standard." *Earl M. Jorgensen Co. v. Mark Constr., Inc.,* 56 Haw. 466, 470, 540 P.2d 978, 982 (1975). In other words, a contract is reached from "the bargain of the parties in fact as found in their language or by implication from other circumstances[.]" Hawaiʻi Revised Statutes (HRS) §§ 490:1–201(3) and (11) (1993). Furthermore,

> [a] party's words or acts are judged under a standard of reasonableness in determining whether he [or she] has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention.

*Jorgensen,* 56 Haw. at 470, 540 P.2d at 982.

■ It follows that the purely subjective, or· secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties. "Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties." *Jorgensen,* 56 Haw. at 470–71, 540 P.2d at 982.

Based on these principles of contract law, we conclude that, contrary to Abastillas' contention, mutual agreement indeed existed at

the time the parties entered into the settlement.

First, both parties were clearly operating under the understanding that our remand of the case to the circuit court had effectively "fragmented out" the damages issues, by affirming the punitive damages award and remanding on the sole issue of the amount of general damages.[14] The record demonstrates that the parties focused exclusively on the issue of general damages, from the moment the case was set for retrial through the execution of the settlement agreement. In the instances that punitive damages were mentioned, it was solely for the fact that they were not an issue on remand. *See* Abastillas' Motion in Limine to Exclude Certain Evidence (stating that "[t]he original jury awarded the Kekonas punitive damages. This award has not been reversed. Punitive damages are therefore ·not an issue in the case on this retrial[.]").

Second, Abastillas' attorney plainly stated in his declaration that "[t]he only discussion [at the December 2, 1998 settlement conference] was about settling the case set for jury trial that day." The only issue concerning Abastillas in the case set for jury trial that day was, of course, the amount of general damages.

Third, Abastillas makes no claim that the matter of punitive damages was expressly and specifically raised at any time before the execution of the settlement agreement.[15]

---

14. The circuit court found

> that the issues were fragmented because the Intermediate Court of Appeals had affirmed the revised judgment in all respects, other than what was remanded to the circuit court, and it was fragmented in that manner.
>
> ....
>
> But if one looks at the Intermediate Court of Appeals' decision, the remand for a new trial on any claim was on a claim against Mr. Smith. It was not a claim against Ms. Abastillas.
>
> And as to Ms. Abastillas the Intermediate Court of Appeals affirmed on liability, affirmed on punitive damages, but only remanded the case for the discreet [sic] issue of general damages, and that was the only issue before this Court. The punitive damages issue was affirmed and there has been a judgment as to punitive damages.

15. Abastillas claimed she made a "global" settlement offer of $50,000 to the Kekonas on October 7, 1998, shortly after the case on remand had been set for retrial. This offer encompassed, however, far more than the punitive damages judgment. It extended to the dismissal of the slew of pending cases the Kekonas had filed against Abastillas, Smith, their respective corporations and·other individually-named codefendants. The offer also required that the Kekonas withdraw the disciplinary complaints they had filed against Smith and a previous attorney (Jack Morse).

The breadth of the consideration bargained for in the offer letter notwithstanding, the offer nevertheless failed to expressly or specifically identify the necessity of settling the punitive damages. The offer letter could therefore hardly suffice as "notice" to the Kekonas that the specific issue of punitive damages continued to be a part of the settlement negotiations at issue in this case,

While Abastillas declared that she had no intention of settling the case without inclusion of the punitive damages issue, she apparently failed to transmit such an intent to the Kekonas, directly or through her attorney.

Finally, and perhaps most telling, are the declarations of Abastillas, Geshell and Smith regarding their respective recollections of discussions they had about the legal effect of a dismissal with prejudice under HRCP Rule 41(a)(1)(B). Abastillas declared that she met with both Geshell and Smith on December 2, 1998, immediately before agreeing to settle the case, and that

> [t]he attorneys then discussed what they called Rule 41, explaining that under this rule, a dismissal with prejudice would end the Kekonas' case against me: it would be gone, the punitive damages and costs included; the Kekonas would no longer have any claims of any kind against me in this case; and I would no longer be in their debt.

It is clear that, prior to this meeting, Abastillas understood that her agreement to settle applied exclusively to the general damages issue. In essence, her intent, before the meeting occurred, was to settle only the general damages issue.

For his part, Geshell could not confirm that he provided such advice to Abastillas at the meeting. Instead, Geshell stated that, after the case had been settled:

> 4. ... I was in Nebraska, [when] I returned Mr. Benco's call as he requested. He asked me if the settlement for $3,000 included the punitive damage judgment. I was surprised by this call, but anyway I started my analysis and my answer by saying that I was aware that the Kekonas had a punitive damage judgment existing before the settlement. I also said that since the stipulation dismissed the case, it was susceptible to at least two interpretations, one of which was that the judgment was wiped out by the settlement, but that I would need to look at the stipulation again to determine the legal effect of it and that I would look at it when I return to Hawai'i

from Nebraska and discuss it further with him at that time.

> 5. After thinking about it for a couple of hours while I was in Nebraska, I called Mr. Benco later that evening hoping to talk with him but was unable to do so. I left a message on his answering machine that, after thinking about it, my conclusion was that the dismissal was intended by my client to terminate the case, which meant that the judgment was no longer effective when the case was dismissed with prejudice. I still believe that legal analysis and conclusion are correct.

Implicit in Geshell's declaration is the fact that he never informed the Kekonas of Abastillas' intent to settle pursuant to her "new" understanding of HRCP Rule 41.

Smith simply declared that

> I have made no representation (of fact) that the Kekonas' punitive damage claims (or claim for costs) have been "settled." Rather, I have made a legal argument based on the effect of the stipulation for dismissal with prejudice under Rule 41 and the pertinent case law.

Thus, Smith implicitly conceded that the parties' intentions were, in fact, not in conflict, and that a valid contract had been formed without any reference to the punitive damages judgment. Smith's legal argument implicitly confirmed that no question of fact existed regarding the separate question of the terms of the settlement agreement.

It is apparent that, until her purported edification regarding HRCP Rule 41 just hours before settling the case, Abastillas' intent had paralleled that of the Kekonas— i.e, to settle only the issue of general damages. It is also obvious that Abastillas failed to disclose her newfound intent to eliminate the punitive damages judgment.

 We deem it sufficiently clear from the record that the objective intent of both parties was to settle only the matter of general damages. Further, we decide that Abastillas' purely subjective intent was of no consequence to the settlement agreement, given that her intent remained unexpressed at the time the agreement was executed.

which appears to be what Abastillas is impliedly

claiming by bringing up the "global" settlement.

Therefore, because there was no factual question regarding the "existence, validity, and terms of the alleged settlement agreement," we conclude that the circuit court properly exercised its "inherent authority" in summarily granting relief without an evidentiary hearing or a new trial. *Gilmartin,* 10 Haw.App. at 296, 869 P.2d at 1352.

> Alternatively, Abastillas argues that

> [i]f objective manifestations of intention are to be ignored, and "unexpressed" subjective intentions explored instead, then it is clear that the parties understood the settlement differently in a most material aspect. This would compel the conclusion, in turn, that the *minds of the parties never met,* there was no mutual assent and no contract, and the settlement is void. In these circumstances, [the circuit court] at most could only vacate the dismissal and restore the case to the trial calendar. [The circuit court] could *not* simply rewrite the bargain *the way that the Kekonas wanted it,* because there *was* no bargain.

(Emphasis in the original.) Obviously, this argument is erroneous, given the objective theory of contracts we have just outlined. Even if we accept her initial premise, that subjective and unexpressed intentions matter, her argument wends its way, eventually, to another dead end.

Generally, the threshold question of whether a valid contract was formed is presented in the case in which the parties attached different meanings to an ambiguous clause. *United States ex rel. Union Bldg. Materials Corp. v. Haas & Haynie Corp.,* 577 F.2d 568, 573 (9th Cir.1978). In such a case,

> [i]f neither party knows or has reason to know the meaning attached by the other, or if both parties know or have reason to know the meaning attached by the other, then there is no contract. Restatement (Second) of Contracts § 21(A)(1). *However, if only one party knows or has reason to know of the conflict in meaning, the contract will be interpreted in favor of the party who does not know of the conflict.* Restatement (Second) of Contracts §§ 21A(2), 227(2), and 238.

*Id.* (emphasis added). Abastillas was the only party who knew of the conflict between the respective meanings attached to the stipulation by the parties. Accordingly, we interpret the settlement agreement in favor of the Kekonas.

## C. HRCP Rule 41 and Res Judicata.

On appeal, Abastillas expressly concedes there was no factual question before the circuit court about the terms of the settlement agreement. Despite the various arguments she makes on appeal about her intent to settle the punitive damages issue, Abastillas ultimately admits that

> neither Abastillas nor her counsel made any representations *before* the settlement whatsoever. Only after the settlement agreement was performed, and the dismissal with prejudice filed, did Abastillas say, or do, anything. And what she did afterward was to take a legal position on the effect of the dismissal with prejudice under Rule 41.

(Emphasis in the original.) Thus, she makes very clear her true and fundamental position on appeal, that "[h]er claim is that when the Kekonas filed the stipulation for dismissal with prejudice, that filing, under Rule 41, was an adjudication on the merits against the Kekonas which eliminated the punitive damages as a matter of law." This argument is both meretricious and fundamentally flawed.

■ We accept the fundamental premise of this argument, that "[g]enerally, a dismissal 'with prejudice', [sic] is an adjudication on the merits of all the issues that were raised or could have been raised in the pleadings. Thus, subsequent litigation involving the same claims would be barred by *res judicata.*" *Land v. Highway Constr. Co., Ltd.,* 64 Haw. 545, 551, 645 P.2d 295, 299 (1982) (citations omitted) (emphasis in the original).

■ Applied to this case, the foregoing reference to "pleadings" is misleading. A more generic rendition of the doctrine of *res judicata* proves more limpid in the context of this case:

> Under the doctrine of res judicata, "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and

precludes the relitigation, not only of the issues which were actually litigated in the first action, *but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided."*

*In re Dowsett Trust*, 7 Haw.App. 640, 644, 791 P.2d 398, 401 (1990) (citation omitted) (emphasis added). For on remand from this court, the circuit court was not given *carte blanche* to adjudicate all issues that were raised or could have been raised in the original pleadings in this case. "When a reviewing court remands a matter with specific instructions, the trial court is powerless to undertake any proceedings beyond those specified therein." *Foster v. Civil Service Commission*, 255 Ill.App.3d 30, 194 Ill.Dec. 169, 627 N.E.2d 285, 290 (Ct.1993) (citations omitted). Further, "[r]emand for a specific act does not reopen the entire case; the lower tribunal only has the authority to carry out the appellate court's mandate." *Warren v. Department of Administration*, 590 So.2d 514, 515 (Fla.Dist.Ct.App.1991) (citations omitted).

■■■ With respect to the claims against Abastillas, our mandate on remand was clearly limited to the issue of the amount of general damages:

> In conclusion, we vacate that portion of the September 2, 1994 Revised Judgment awarding general damages and attorney's fees against [Abastillas]; remand the case for a new trial on the issue of general damages against [Abastillas] for fraud; remand for a new trial on the negligence claim against Smith; vacate that part of the Revised Judgment which awards attorneys' fees in favor of the Kekonas on their negligence claim against Smith; and affirm the Revised Judgment in all other respects.

*Standard Management v. Kekona*, No. 18388, 87 Hawai'i 263, 953 P.2d 1361 (Haw. App. Nov. 25, 1994) (mem.) at 27–28. So cabined, the circuit court had no jurisdiction to adjudicate with respect to the issue of punitive damages. That issue could not have been "properly litigated" on remand, hence the doctrine of *res judicata* could not have operated against it when the parties stipu-

lated to dismiss the remand proceedings. *Dowsett*, 7 Haw.App. at 644, 791 P.2d at 401.

If we approach the issue from the opposite direction, we reach the same conclusion. "[T]he doctrine of res judicata applies to the decisions of courts of appeal." 46 Am.Jur.2d Judgments § 572 at 849 (1994). This being so, our affirmance of the punitive damages judgment on the previous appeal in this case, *Standard Management v. Kekona*, No. 18388, 87 Hawai'i 263, 953 P.2d 1361 (Haw. App. Nov. 25, 1994) (mem.) at 18–19, was conclusive among the parties, and Abastillas was barred from relitigating the matter of punitive damages on remand. It follows that the issue of punitive damages could not have been "properly litigated" on remand, and therefore the doctrine of *res judicata* could not have operated against it when the parties stipulated to dismiss the remand proceedings. *Dowsett*, 7 Haw.App. at 644, 791 P.2d at 401.

Finally, Abastillas' argument is specious for reasons entirely apart from the particular procedural posture of this case. While we accept the principle that a dismissal with prejudice "is an adjudication on the merits of all the issues that were raised or could have been raised in the pleadings[,]" *Land*, 64 Haw. at 551, 645 P.2d at 299, it does not mean that a dismissal wipes out claims which have been reduced to judgment.

The *Land* principle applies only to claims unresolved at the time of the dismissal. A claim previously reduced to judgment, on the other hand, is a claim already adjudicated on the merits. A subsequent dismissal of the host lawsuit cannot work, without more, a reverse adjudication. And while we agree that the principle of *res judicata* applies to such a judgment, it applies only to the merits of the claim underlying the judgment, and not to the entirely different matter of the enforcement of the judgment, which is precisely what we are concerned with here.

Having thus exposed the fundamental but jerry-built foundation of Abastillas's appeal, we conclude thereon that the circuit court did not err.

138

## IV. CONCLUSION.

For the reasons stated above, we affirm the March 18, 1999 final judgment and its underlying amended stipulation.