389 P.3d 115

ASSOCIATION OF APARTMENT OWN-ERS OF CENTURY CENTER, INC., by and through its Board of Directors, Petitioner/Plaintiff–Counterclaim Defendant–Appellee,

v.

YOUNG JIN AN, aka Young Ja Kim, Ambrosia–Spa, Inc., Respondents/Defendants–Counterclaimants–Appellants,

SCWC–14–0000431

Supreme Court of Hawai'i.

DECEMBER 8, 2016

R. Laree McGuire, for petitioner

Gary Victor Dubin, for respondent

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

## OPINION OF THE COURT BY RECKTENWALD, C.J.

This case involves a nonjudicial foreclosure by the Association of Apartment Owners of Century Center, Inc. (the AOAO) of a unit in the Century Center condominiums. The AOAO purchased the unit at the foreclosure sale, and then filed a complaint for summary possession in the District Court[1] of the First Circuit against Young Jin An aka Young Ja Kim (An) and Ambrosia–Spa Inc. (together, Respondents).

Respondents moved to dismiss, on the grounds that the district court lacked jurisdiction pursuant to Hawaiʻi Revised Statutes (HRS) § 604–5(d), which states that the district court "shall not have cognizance of ... actions in which the title to real estate comes in question." Respondents submitted an affidavit pursuant to District Court Rules of Civil Procedure (DCRCP) Rule 12.1, which requires a party raising this jurisdictional defense to submit an affidavit "setting forth the source, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim."

The district court denied Respondents' motions and, after a hearing on the merits of the AOAO's complaint, filed a Judgment for Possession and a Writ of Possession in favor of the AOAO.

Respondents appealed to the Intermediate Court of Appeals (ICA), arguing that the district court erred in exercising jurisdiction over the case because they had established that title over the Property was in question. The ICA agreed with Respondents, determining that An's affidavit and the quitclaim deed attached to the AOAO's complaint provided sufficient information regarding the source, nature, and extent of the title An claims to the Property. Accordingly, the ICA

vacated the district court's Judgment for Possession and Writ of Possession, and remanded the case to the district court with instructions to dismiss for lack of jurisdiction.

The AOAO now seeks review of the ICA's decision. We find that the ICA did not err in considering the quitclaim deed that was attached to the AOAO's complaint, since the deed supported the claim of title asserted by An's affidavit. We agree with the ICA that An's affidavit satisfied DCRCP Rule 12.1 and that the district court therefore lacked jurisdiction over the summary possession proceeding. Accordingly, the ICA's judgment on appeal is affirmed.

## I. Background

In 2009, Lisa Yongsonyi Nose purchased a leasehold interest in 1750 Kalakaua Avenue, Apartment 116 (Property) as tenant in severalty in an "Assignment of Apartment Lease and Sublease" recorded with the Office of Assistant Registrar, Land Court of the State of Hawaiʻi (Land Court). According to the AOAO, Nose fell behind on her payments to the AOAO for maintenance and other fees, and in a letter to Nose dated April 13, 2010, the AOAO demanded payment of unpaid assessments, totaling $17,871.29. The AOAO subsequently sent three more demand letters, and on August 26, 2011, the AOAO filed a "Notice of Lien for Unpaid Assessments" against Nose in the Land Court. In a letter dated August 31, 2011, AOAO notified Nose that a lien had been filed upon the Property.

Meanwhile, on December 9, 2010, the Land Court recorded an agreement of sale between Nose and An for title to the Property for a purchase price of $320,000.

On December 2, 2011, the AOAO filed with the Land Court a "Notice of Default and Intention to Foreclose." In a letter to Nose on July 27, 2012, the AOAO sent an offer to enter into a payment plan agreement to bring her account current and release the lien. In a letter to the AOAO on the same day, An's counsel stated that he had edited

---

1. The Honorable Hilary B. Gangnes presided over the Order Denying Motion to Dismiss, Denial of Motion for Rehearing and/or Reconsideration, and Order Denying Renewed Motion to Dismiss. The Honorable Melanie M. May presided over the Writ of Possession and Judgment for Possession.

the July 27, 2012 letter by replacing Nose's name with An's name, and that An had signed and agreed to the agreement. He attached a document signed by Nose stating, "[An] is authorized to make payments directly to Hawaiiana Management[2] on all current and future monthly maintenance bills[.]" On August 27, 2012, the AOAO recorded a release of the Notice of Default and Intention to Foreclose.

On September 27, 2012, the AOAO sent a demand letter to Nose and An, informing them that monthly maintenance payments were not paid and that the terms and conditions of the July 27, 2012 letter are "deemed immediately null and void." The letter also informed them that they must pay $37,435.18 within ten days or the AOAO "may take legal action against you without further notice."

On October 24, 2012, the AOAO recorded another "Notice of Default and Intention to Foreclose" against Nose, stating that if she does not pay $45,380.79 within 60 days, "the Association intends to conduct a power of sale foreclosure to sell the property at a public sale[.]" Nose was served on November 1, 2012. The AOAO was unable to find and serve An. Notice of the pending "non-judicial foreclosure under power of sale" was published in the Honolulu Star–Advertiser on June 19, June 26, and July 3, 2012. On February 13, 2013, a copy of the notice was posted on the Property.

At a public sale on April 17, 2013, the AOAO purchased the Property for $1. On May 9, 2013, the Land Court recorded the AOAO's "Affidavit of Non–Judicial Foreclosure Under Power of Sale," which stated that the foreclosure "was conducted as required by the power of sale foreclosure law" and provided a summary of steps taken by the AOAO. On May 15, 2013, the Land Court recorded the AOAO's "Quitclaim Assignment of Lease," assigning the Property from the AOAO to itself. On May 23, 2013, the AOAO sent a letter addressed to the "Occupant" of the Property, stating that it was now the owner and that any occupants could either provide a copy of their valid lease within five days or vacate the unit.

On June 18, 2013, the AOAO filed a complaint seeking summary possession of the Property. Respondents filed an answer which argued, among other things, that An owned the Property and that the district court lacked jurisdiction over the case pursuant to HRS § 604–5(d).

Pursuant to DCRCP Rule 12.1, the answer attached an affidavit signed by An, which stated in its entirety:

1. I am Defendant in this action. Plaintiff has incorrectly identified me in the Complaint as Young Jin An, but my name is Young Ja Kim.

2. I acquired title to the real property identified as 1750 Kalakaua Avenue, Apartment 116, Honolulu Hawaii 96826 (the "Real Property") from Lisa Yongsonyi Nose by virtue of an Agreement of Sale dated December 7, 2010 and recorded as Land Court Document No. 4028097. The purchase price for the Real Property was $320,000.

3. I am the sole owner of the equitable interests in the Real Property.

4. My interest in the Real Property was wrongfully foreclosed upon by the Plaintiff, as set forth in detail in the Counterclaim filed concurrently herewith.

5. From and after my acquisition of the Real Property, Hawaiiana Management Company ("Hawaiiana"), the managing agent of the Real Property for Plaintiff Association of Apartment Owners of Century Center, Inc. ("Plaintiff" or the "AOAO"), failed and/or refused to transmit all of the monthly statements to me, which resulted in delinquent payments to the AOAO.

6. In or about June of 2012, I reached an agreement with the AOAO to pay down the delinquent assessments over a twelve month period and to remain current on the monthly maintenance fee assessments.

7. Even after this agreement, Plaintiff's agent, Hawaiiana, did not send me monthly statements on a regular basis, which caused payments to be made late.

8. In November 2012, I executed a Hawaiiana Change of Address Form for Billing &

2. Hawaiiana Management is the management company for the AOAO.

Correspondence ("Change of Address Form").

9. Even after submitting the Change of Address form, Hawaiiana did not send me the monthly maintenance fee assessment statements. I had to go to Hawaiiana and have them printed for me. Thereafter, I continued to make the settlement payments and the monthly maintenance fee payments in the amounts set forth in the monthly statements.

10. Unbeknownst to me and without notice, the AOAO was charging me a late fee each month in the amount of 5% of the total amount claimed to be outstanding. Also unbeknownst to me, the AOAO was charging me significant amounts of attorneys' fees. Neither the late fees nor the attorneys' fees were shown on the monthly statements delivered to me.

11. Without my knowledge, the AOAO applied approximately $15,623.86 of my Settlement Payments and/or Monthly Assessment Payments to late charges which purportedly accrued from July 2012 to May 2013.

12. As of April 2013, I made all of the Settlement Payments and all or a sufficient number of Monthly Assessment Payments to keep current, but for the AOAO's secret assessment of illegal and unenforceable late charges, as well as, legal fees and costs related thereto.

13. In spite of all the payments I made, the AOAO noticed a foreclosure sale of the Real Property and alleged that I was delinquent in the amount of $41,129.62 as of April.

14. I spoke to Hawaiiana regarding the notice of foreclosure sale of the Real Property and was told that as long as I was making any settlement payments and monthly payments, the foreclosure sale would not occur.

15. Because I was current on the monthly settlement payments and monthly maintenance fee payments set forth in the statements sent to me, I understood that the foreclosure sale would not occur.

16. Unbeknownst to me, the sale went forward and the AOAO claimed to be the highest bidder for the Real Property in the amount of $1.

17. By counterclaim attached hereto, I am challenging the AOAO's wrongful foreclosure and the AOAO's claim of title to the Real Property.

18. I dispute the Plaintiff's alleged title to the Real Property is superior to my title to the Real Property.

Along with their answer, Respondents filed a counterclaim against the AOAO, which alleged claims for negligence/breach of fiduciary duty, unfair and deceptive trade practices, negligent misrepresentation, wrongful foreclosure, quiet title, declaratory relief, and unjust enrichment.

The district court approved An's demand for jury trial "as to non-possession issues only" and committed those issues to the Circuit Court of the First Circuit.

On August 14, 2013, Respondents filed a "Motion to Dismiss For Lack of Subject Matter Jurisdiction" based on HRS § 604–5(d). They attached An's affidavit, which was identical to the one attached to their answer, except for the date. The AOAO opposed the motion, arguing that "there is no dispute as to title to the subject property" because Respondents "merely held an equitable interest in the subject property and do not claim to title as required by [DCRCP] Rule 12.1[.]" Respondents replied that the affidavit satisfied DCRCP Rule 12.1, explaining: "The source of her title is the Agreement of Sale. The nature of her title is equitable. The extent of her equitable ownership interest is 100%."

On September 16, 2013, the district court held a hearing on the motion to dismiss, at which the AOAO argued that HRS § 667–102 [3] was recently passed in 2012 "specifically

---

**3.** HRS § 667–102 (2012) provides:
(a) The affidavit required under section 667–101 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not later than forty-five days after the public sale is held. The affidavit and the convey-

ance document may be recorded separately and on different days. After the recordation, the association shall mail or deliver a recorded copy to those persons entitled to receive the public notice of the public sale under section 667–96(c).

to bar frivolous claims as such to title by tenants in a property." The AOAO stated that An's claims were barred because it had recorded its affidavit of sale and quitclaim deed prior to filing its complaint, thereby satisfying HRS § 667–102. Following the hearing, Respondents filed a supplemental reply, arguing that the recording of the AOAO's affidavit of sale and conveyance document does not "cut[ ] off all rights of a unit owner to dispute title[.]"

On September 30, 2013, the district court held another hearing on the motion to dismiss and denied the motion based on HRS § 667–102. On October 10, 2013, the district court entered its order denying Respondents' motion to dismiss.

On January 15, 2014, Respondents filed a "Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction," arguing that An satisfied DCRCP Rule 12.1 based on (1) the agreement of sale between An and Nose, (2) a promissory note from An to Nose in the amount of $50,000, (3) a mortgage executed by An and delivered to Nose "as a security interest in the subject property," and (4) an undated, unrecorded "Assignment of Apartment Lease and Sublease in Satisfaction of Agreement of Sale" executed by Nose and delivered to An. Respondents stated that "[An's] and Ms. Nose's efforts to finalize the Agreement have been thwarted by the AOAO's unlawful nonjudicial foreclosure[,]" but that "the Note, Mortgage and Assignment ... show that the Agreement is still in force and effect."

The AOAO opposed the motion, arguing that it was, in effect, an untimely motion for reconsideration of the district court's October 10, 2013 order and that the district court has "exclusive jurisdiction over summary possession matters."

At a hearing on January 27, 2014, the court denied the motion, stating that under HRS § 667–102 "title cannot be an issue under ... a pretty narrow set of circumstances" and that those circumstances were present here.

On January 29, 2014, the district court held a trial on the merits of the complaint, ruled in favor of the AOAO, and filed a Judgment for Possession and a Writ of Possession.

## A. ICA Proceedings

On appeal, Respondents argued that the district court erred in denying their motion to dismiss for lack of jurisdiction under HRS § 604–5(d). The ICA agreed, holding that the district court lacked jurisdiction over the eviction action because Respondents satisfied DCRCP Rule 12.1.

The ICA reasoned that "[t]he Quitclaim Assignment of Lease attached to the AOAO's complaint along with An's affidavit provided sufficient information to apprise this court of the source, nature, and extent of the title An claims to the Property." Specifically, the quitclaim assignment of lease showed that "on April 2, 2009, the land court recorded the interest in the Property as assigned to Nose as Tenant in Severalty" and "on December 7, 2010, the land court recorded the Agreement of Sale of the Property from Nose to An." Additionally, the ICA determined that An

---

(b) When both the affidavit and the conveyance document are recorded:

(1) The sale of the unit is considered completed;

(2) All persons claiming by, through, or under the unit owner and all other persons having liens on the unit junior to the lien of the association shall be forever barred of and from any and all right, title, interest, and claims at law or in equity in and to the unit and every part of the unit, except as otherwise provided by law;

(3) The lien of the association and all liens junior in priority to the lien of an association shall be automatically extinguished from the unit; and

(4) The purchaser shall be entitled to immediate and exclusive possession of the unit.

(c) The unit owner and any person claiming by, through, or under the unit owner and who is remaining in possession of the unit after the recordation of the affidavit and the conveyance document shall be considered a tenant at sufferance subject to eviction or ejectment. The purchaser may bring an action in the nature of summary possession under chapter 666, ejectment, or trespass or may bring any other appropriate action in a court where the unit is located to obtain a writ of possession, a writ of assistance, or any other relief. In any such action, the court shall award the prevailing party its reasonable attorneys' fees and costs and all other reasonable fees and costs, all of which are to be paid for by the non-prevailing party.

"set forth with particularity the basis for her claim challenging the AOAO's assertion of title to the Property, that the AOAO wrongfully foreclosed on the Property because An had completed the payments due to the AOAO under the Settlement Agreement."

Thus, the ICA vacated the district court's Writ of Possession, Judgment for Possession, and denials of Respondents' motions, and it remanded the case to the district court with instructions to dismiss for lack of jurisdiction.

## II. Standards of Review

### A. Subject Matter Jurisdiction

■ "The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." Lingle v. Hawai'i Gov't Emps. Ass'n, AFSCME, Local 152, AFL–CIO, 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005) (quoting Amantiad v. Odum, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999)).

## III. Discussion

The AOAO's application presents the following three questions:

1. The ICA gravely erred in holding the district court lacked jurisdiction because Defendant An did not sufficiently set forth the source, nature and extent of her claim to title in her affidavit as required under District Court Rules of Civil Procedure ("DCRCP") 12.1.

2. The ICA committed grave error by improperly considering documents submitted by the AOAO to determine whether Defendant An had sufficiently raised an issue of title to bar the jurisdiction of the district court.

3. The ICA's Opinion is notably inconsistent not only with its own prior decisions, but also with a Hawaii Supreme Court decision, which requires Defendants to assert some credible claim to title.

The issue in this case is whether the district court has jurisdiction over the AOAO's summary possession action under HRS § 604–5(d). HRS § 604–5(d) provides that the district court does not have jurisdiction over cases in which the title to real estate is in question:

§ 604–5 Civil jurisdiction.

. . . .

(d) The district courts shall not have cognizance of real actions, nor actions in which the title to real estate comes in question, nor actions for libel, slander, defamation of character, malicious prosecution, false imprisonment, breach of promise of marriage, or seduction; nor shall they have power to appoint referees in any cause.

(Emphasis added).

■ Whenever a defendant asserts HRS § 604–5(d) as a challenge to jurisdiction in the district court, the defendant must satisfy DCRCP Rule 12.1. DCRCP Rule 12.1 requires the defendant to provide an affidavit that sets forth the "source, nature and extent of the title claimed" to the property and "such further particulars" to apprise the court of the nature of the claim:

Whenever, in the district court, in defense of an action in the nature of an action of trespass or for the summary possession of land, or any other action, the defendant shall seek to interpose a defense to the jurisdiction to the effect that the action is a real action, or one in which the title to real estate is involved, such defense shall be asserted by a written answer or written motion, which shall not be received by the court unless accompanied by an affidavit of the defendant, setting forth the source, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim.

(Emphases added).

Respondents attached an affidavit signed by An to their answer to the AOAO's complaint and to their motion to dismiss, and the AOAO argues that this affidavit did not satisfy DCRCP Rule 12.1.

This court has stated that an affidavit filed pursuant to DCRCP Rule 12.1 must provide some specificity as to the defendant's claim to title:

The phrase "further particulars" indicates that the reference to "source, extent, and nature" of the claim are "particulars" of the defense, whose purpose is to "fully

apprise" the court of the defendant's claim to title. DCRCP Rule 12.1 (Emphasis added). Although DCRCP Rule 12.1 does not define the term "particulars," that term suggests that the affidavit must include some details or specificity regarding the nature of the defendant's claim.

Thus, the source, nature, and extent of title claimed by the defendant must be described to the court with some detail and specificity. In addition to particularly describing the source, nature, and extent of title, the defendant may also include in the affidavit any other particulars, the objective being to apprise the court fully of the nature of the defendant's claim.

Deutsche Bank Nat. Tr. Co. v. Peelua, 126 Hawai'i 32, 36–37, 265 P.3d 1128, 1132–33 (2011).

■ An affidavit cannot state "only in a vague and conclusory fashion" that the defendant owns the property at issue, id. at 38, 265 P.3d at 1134, or "merely assert[ ] that title was at issue," Aames Funding Corp. v. Mores, 107 Hawai'i 95, 99, 110 P.3d 1042, 1046 (2005).

For example, this court found that an affidavit set forth the source, nature and extent of the title where a "fair reading of the affidavit" demonstrated that the defendant claimed "an undivided one-sixth interest in fee simple, which descended to her by intestate succession from the immediately preceding sole owner." Monette v. Benjamin, 52 Haw. 246, 248, 473 P.2d 864, 865 (1970). However, we held that an affidavit did not provide the requisite level of specificity regarding the title claimed where it simply declared "[T]his action involves a dispute as to title to real property" and "We claim that we have title to the Property." Aames, 107 Hawai'i at 99, 110 P.3d at 1046 (brackets omitted). We also held that an affidavit was insufficient where it asserted that the defendant had a deed to the property, but did not "describe the contents of the deed or the type of deed he acquired." Peelua, 126 Hawai'i at 38, 265 P.3d at 1134.

■ Similarly, with regard to a defendant's claims, the affidavit must provide some detail as to "how or whether the allega-tion has any bearing on title to the Property." Id.; see also U.S. Bank Nat. Ass'n v. Castro, 131 Hawai'i 28, 38, 313 P.3d 717, 727 (2013) ("[The defendants] have failed to demonstrate what bearing the allegations, even if true, would have on title to the Property."). Accordingly, this court held that an affidavit did not provide the requisite "particulars" where it claimed solely that the defendant was " 'defrauded, duped, coerced and tricked' into engaging in transactions involving the Property." Peelua, 126 Hawai'i at 38–39, 265 P.3d at 1134–35. Similarly, an affidavit stating that the defendant "believe[d]" the purchaser was unable to foreclose on the property was "speculative and lacking the type of detail and specificity required by Rule 12.1." Castro, 131 Hawai'i at 38, 313 P.3d at 727 (internal quotation marks and citation omitted).

■ As an initial matter, the ICA did not err by considering the quitclaim deed that was attached to the AOAO's complaint. The ICA explained its basis for relying on the quitclaim deed in a footnote:

"Once a defendant establishes that title is in question, a court cannot consider evidence or arguments in rebuttal of the defendant's claim to title, or evidence in support of the plaintiff's claim to a superior basis of title because that would be for the circuit court to decide." Peelua, 126 Hawai'i at 39, 265 P.3d at 1135. However, where a plaintiff attaches a quitclaim deed to its complaint, a court may consider it in determining a defendant's assertion that the district court lacks jurisdiction under HRS § 604–5(d). Id. at 39, 265 P.3d at 1135 ("[The plaintiff] was required to plead entitlement to possession of the Property and could appropriately attach a copy of its quitclaim deed in support of its claimed ownership.").

■ We agree with the ICA's application of Peelua. In Peelua, this court held that, in reviewing a defendant's DCRCP Rule 12.1 motion, the court cannot consider counter-evidence to rebut the question of title. 126 Hawai'i at 39, 265 P.3d at 1135. However, a district court may consider attachments to the plaintiff's complaint if such attachments support the claim of title asserted by the

defendant's affidavit, since the attachments may provide non-speculative substantiation of the title claim.

Therefore, the ICA did not err in considering the quitclaim deed attached to the AOAO's complaint because it supported the question of title raised by An's affidavit.

■ We now turn to whether An's affidavit satisfies DCRCP Rule 12.1. With regard to the source, nature, and extent of the title claimed by An, the affidavit states in relevant part:

> 2. I acquired title to the real property identified as 1750 Kalakaua Avenue, Apartment 116, Honolulu Hawaii 96826 (the "Real Property") from Lisa Yongsonyi Nose by virtue of an Agreement of Sale dated December 7, 2010 and recorded as Land Court Document No. 4028097. The purchase price for the Real Property was $320,000.
>
> 3. I am the sole owner of the equitable interests in the Real Property.
>
> . . . .
>
> 18. I dispute the Plaintiff's alleged title to the Real Property is superior to my title to the Real Property.

A "fair reading of the affidavit" demonstrates that the source of title was the agreement of sale, the nature of title was An's resulting equitable interest in the Property, and the extent of the title was An's "sole owner[ship]" of the interest. Monette, 52 Haw. at 248, 473 P.2d at 865. Thus, the affidavit provided enough information to satisfy DCRCP Rule 12.1 and did not "merely assert[ ] that title was at issue[.]" Aames, 107 Hawai'i at 99, 110 P.3d at 1046.

[8] The AOAO argues that the agreement of sale cannot serve as the source of a claim to title because the agreement gave An only an equitable interest in the Property and legal title remained with Nose. The AOAO is correct that "[u]nder an agreement of sale, the legal title to the property remains in the seller," and "upon the execution and delivery of the agreement of sale, there accrues to the [buyer] an equitable interest in the land." Jenkins v. Wise, 58 Haw. 592, 596, 574 P.2d 1337, 1341 (1978). However, this equitable interest entitles the buyer to "immediate possession" of the property, id. and once the buyer satisfies conditions the agreement of sale, the buyer is entitled to title, see HRS § 502–85(c).

Moreover, in Jellings v. Kaihe, the Supreme Court of the Territory of Hawai'i addressed a question similar to that presented here—whether an affidavit "disclose[d] that the defendants had any claim of title to the land" for the purpose of determining whether "the district magistrate would be required to adjudicate in the trial of the suit for rent." 30 Haw. 160, 162 (Terr. Haw. 1927). The court noted that one defendant had entered into an oral agreement of sale with the plaintiff, but concluded that this was not sufficient to assert title for the following reasons:

> It does not appear from the affidavit that the agreement therein described was in force at the time the plea to the jurisdiction was interposed. The date of the agreement is not given nor is it alleged that [defendant] had performed all the conditions imposed upon her by the contract. Certainly there is no presumption of the continuance of the contract. If at the time the plea to the jurisdiction was interposed the contract had been rescinded by consent of the parties and was no longer in force no claim of interest or title to the property could be predicated upon it. The position of the defendants in this case would be the same as if no contract had ever been made. If the defendants wished to successfully challenge the jurisdiction of the district magistrate it was incumbent upon them to show affirmatively by their affidavit that their claim of title was based on a contract that was still in force and effect.

Id. (emphases added).

In other words, the court concluded that an agreement of sale could serve as the basis for a claim to title, but that the existence of an agreement in that case was too tenuous. Notably, this passage of Jellings has been favorably cited twice by this court. See Monette, 52 Haw. at 249, 473 P.2d at 866; Peelua, 126 Hawai'i at 38, 265 P.3d at 1134.

■ Thus, we hold that the equitable interest created by an agreement of sale—

although not "legal title"—is nevertheless sufficient to constitute "title" for the purposes of DCRCP Rule 12.1.

The AOAO argues that, in any event, An's affidavit was insufficient under Jellings because it failed to state that the agreement of sale "was valid at the time of the AOAO's summary possession action." The AOAO misconstrues Jellings. The court in Jellings did state that it was "incumbent" on the defendants to show that their agreement "was still in force and effect," 30 Haw. at 162, but it never indicated that an explicit statement to that effect was required. Indeed, it can be inferred, based on a "fair reading" of An's affidavit, that she alleged that her agreement was valid at the time of the summary possession action. Monette, 52 Haw. at 248, 473 P.2d at 865. An's affidavit stated that "I am sole owner of the equitable interests in the Real Property[,]" which was "by virtue of an Agreement of Sale." This language was sufficient to allege that the agreement was in force and effect under Jellings and for the purposes of DCRCP Rule 12.1.

With regard to the nature of Respondents' claim, the affidavit stated that An's interest "was wrongfully foreclosed upon" by the AOAO. The affidavit explained that she "made all of the Settlement Payments and all or a sufficient number of Monthly Assessment Payments to keep current, but for the AOAO's secret assessment of illegal and unenforceable late charges, as well as, legal fees and costs related thereto." The affidavit further stated, "I spoke to Hawaiiana regarding the notice of foreclosure sale of the Real Property and was told that as long I was making my settlement payments and monthly payments, the foreclosure sale would not occur." Respondents therefore claim that they were not delinquent on their payments and that the AOAO did not have the authority to conduct a non-judicial sale. This explanation provides sufficient detail as to "how or whether the allegation has any bearing on title to the Property[,]" Peelua, 126 Hawaiʻi at 38, 265 P.3d at 1134, because if the AOAO's foreclosure was invalid, Respondents continue to have a conditional right to title under the agreement of sale.

Thus, An's affidavit satisfied DCRCP Rule 12.1, and the district court lacked jurisdiction over the AOAO's summary possession action under HRS § 604-5(d).

As a final note, the AOAO also asserts that the ICA failed to consider HRS § 501–118 and HRS § 667–102(b)(2) because these statutes barred Respondents from challenging the AOAO's right to foreclosure. We find the AOAO's argument unpersuasive.

HRS § 501–118 provides, "Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title." (Emphasis added). There was no new certificate of title entered in this case, and thus, HRS § 501–118 does not apply here.

HRS § 667–102(b)(2) provides:

All persons claiming by, through, or under the unit owner and all other persons having liens on the unit junior to the lien of the association shall be forever barred of and from any and all right, title, interest, and claims at law or in equity in and to the unit and every part of the unit, except as otherwise provided by law[.]

(Emphasis added).

HRS § 667–104(4) states that it is "a prohibited practice for any association" to "[c]omplet[e] or attempt[ ] to complete nonjudicial foreclosure proceedings against a unit owner in violation of section 667–92(c)." HRS § 667–92(c) in turn provides that nonjudicial foreclosure proceedings "shall be stayed" during the term of a payment plan between the unit owner and the association. An's affidavit alleges that she was current under her payment plan with the AOAO as of the foreclosure date. An's claim therefore falls under HRS § 667–102(b)(2)'s "otherwise provided by law" exception. Accordingly, HRS § 667–102(b)(2) does not bar Respondents' challenge.

## IV. Conclusion

For the foregoing reasons, the ICA did not err in considering the AOAO's quitclaim deed as part of its analysis or in determining that

An's affidavit satisfied DCRCP Rule 12.1. Therefore, the ICA's judgment on appeal is affirmed.