**Electronically Filed
Supreme Court
SCWC-15-0000848
20-DEC-2021
11:02 AM
Dkt. 32 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STEVEN S. ALM[1], in his official capacity as
the Prosecuting Attorney of the City and County of Honolulu,
on behalf of the State of Hawai'i,
Respondent/Petitioner-Appellant,

vs.

ELEVEN (11) PRODUCTS DIRECT SWEEPSTAKES MACHINES (TOTAL
EXTIMATED VALUE: $38,500.00), FOUR HUNDRED FIFTY SEVEN DOLLARS
IN UNITED STATES CURRENCY ($457.00); ONE (1) CAM SECURITY
DIGITAL RECORDING SYSTEM (ESTIMATED VALUE: $200.00) (TOTAL
AGGREGATE VALUE: $39,157.00),
Respondent/Defendant-Appellee,

and

PJY ENTERPRISES, LLC,
Petitioner/Claimant-Appellee,

and

WINNER'Z ZONE; APRIL WHITING-HARAGUCHI,
TRACY YOSHIMURA, and WENDY WAGNER,

_____

[1]     Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1) (2019), Steven S. Alm has been substituted as a party in place of Keith M. Kaneshiro, the former Prosecuting Attorney of the City and County of Honolulu.

Respondents/Interested Persons-Appellees.
(CAAP-15-0000848; S.P. NO. 14-1-0567)

SCWC-15-0000848[2]

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000848, S.P. NO. 14-1-0567; CAAP-15-0000849,
S.P. NO. 14-1-0568; CAAP-15-0000850, S.P. NO. 14-1-0569;
CAAP-15-0000852, S.P. NO. 14-1-0570; CAAP-15-0000854,
S.P. NO. 14-1-0571; CAAP-15-0000855, S.P. NO. 14-1-0572)

DECEMBER 20, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.[3]

OPINION OF THE COURT BY WILSON, J.

This case addresses whether the Honolulu Police

Department's ("HPD") seizure of seventy-seven Product Direct

Sweepstakes ("PDS") machines and the Office of the Prosecuting

Attorney's subsequent petition for administrative forfeiture

comported with Hawai'i's civil forfeiture statute, Hawai'i Revised

Statutes ("HRS") Chapter 712A.  In September 2012, HPD began

seizing PDS machines from six Winner'z Zone locations because it

deemed the machines to be in violation of Hawai'i's gambling

---

[2]     CAAP-15-0000848, CAAP-15-0000849, CAAP-15-0000850,
CAAP-15-0000852, CAAP-15-0000854, and CAAP-15-0000855 were previously
consolidated in the Intermediate Court of Appeals ("ICA") under CAAP-15-
0000848.

[3]     Associate Justice Richard W. Pollack who was a member of the
court when oral argument was held, retired from the bench on June 30, 2020.

2

statutes.[4]  The machines remained in police custody for nearly two years.  During that time, HPD did not initiate forfeiture proceedings pursuant to HRS § 712A-7(3) (1991)[5], did not give notice of the seizure of forfeiture to all parties known to have an interest in the property and did not provide the prosecutors a written request for forfeiture as required by HRS §712A-7(4)

---

[4]     The relevant gambling statutes are HRS §§ 712-1222 and 712-1226 (1991).  HRS § 712-1222 provides:

> (1) A person commits the offense of promoting gambling in the second degree if the person knowingly advances or profits from gambling activity.

> (2) Promoting gambling in the second degree is a misdemeanor.

HRS § 712-1226 provides:

> (1) A person commits the offense of possession of a gambling device if the person manufactures, sells, transports, places, possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody, or use of any gambling device, knowing it is to be used in the advancement of gambling activity which is not social gambling.

> (2) Possession of a gambling device is a misdemeanor.

[5]     HRS § 712A-7(3) provides:

> As soon as practicable after seizure for forfeiture, the seizing agency shall conduct an inventory and estimate the value of the property seized. Within twenty days after seizure for forfeiture the seizing agency shall make reasonable efforts to give notice of seizure for forfeiture in the manner provided in section 712A-8(a) or 712A-8(b) to all parties known to have an interest in the seized property.

(1991).[6]   Instead, in September 2014, HPD "re-seized" the machines for forfeiture and began forfeiture proceedings. Forfeiture proceedings were initiated on September 22, 2014, by the prosecutor's office.

        We hold that a seizing agency's failure to commence forfeiture proceedings according to the specific timing requirements set forth in HRS §§ 712A-7 and 712A-9[7] (1991) requires the agency to return the seized property.

_____

[6]     HRS § 712A-7(4) provides:

        (4)   In the event of a seizure for forfeiture under section 712A-6, the seizing agency shall send to a prosecuting attorney a written request for forfeiture within thirty days, which shall include a statement of facts and circumstances of the seizure, the appraised or estimated value of the property, and a summary of the facts relied on for forfeiture.

[7]     HRS § 712A-9 provides in relevant part:

        (1)   The prosecuting attorney shall determine whether it is probable that the property is subject to forfeiture and, if so, shall initiate administrative or judicial proceedings against the property within forty-five days of receipt of a written request for forfeiture from a seizing agency. If, on inquiry and examination, the prosecuting attorney determines, with sole discretion, that the proceedings probably cannot be sustained or that justice does not require the institution of proceedings, the prosecuting attorney shall notify the seizing agency, and as soon as practicable authorize the release of the seizure for forfeiture on the property or on any specified interest in it. A determination by the prosecuting attorney to forego initiation of proceedings shall not be a bar to initiation of proceedings against the same property based on the same circumstances at a later time.

4

## I. Background

**A. Factual Background**

On September 26, 2012, HPD obtained a search warrant to search six Winner'z Zone business locations for property held in violation of Hawai'i's gambling statutes, HRS §§ 712-1222 and 712-1226. The following day, on September 27, 2012, HPD began executing the search warrant at each location. HPD seized seventy-seven PDS machines, in addition to other items it deemed violated Hawai'i's gambling statutes that was authorized by the search warrant.

The PDS machines remained in HPD custody for nearly two years before HPD began forfeiture proceedings. HPD cancelled the investigation for the initial HPD report number that documented the seizure for forfeiture "[d]ue to time constraints." After the investigation was cancelled, the machines remained in police custody. On September 12, 2014, a new HPD report number was issued by HPD stating that the PDS machines were re-seized for forfeiture.[8]

---

[8] The Prosecuting Attorney asserted in the Petition for Administrative Forfeiture filed with the Department of Attorney General on September 22, 2014, that HPD cancelled its 2012 investigation (HPD report number 12-351453) due to time constraints and that the property was re-seized under HPD report number 14-332134.

Seven days later, on September 19, 2014, HPD sent a request for forfeiture to the Office of the City and County of Honolulu Prosecuting Attorney ("prosecutor's office").  On September 22, 2014, pursuant to HRS § 712A-9, the prosecutor's office began administrative forfeiture proceedings by filing a petition for administrative forfeiture with the Department of the Attorney General.  Petitioner/Appellee-Claimant, PJY Enterprises, LLC ("PJY") challenged the seizure on November 3, 2014,[9] by filing a claim to the seized property and a request for judicial review of administrative forfeiture.[10]

---

[9]    PJY previously challenged the seizure on October 12, 2012, by filing a complaint for declaratory judgment, injunctive relief, and monetary damages against HPD in the circuit court.  That case was removed to federal court.  On April 30, 2014, the federal court granted a motion for summary judgment in favor of the Prosecuting Attorney, finding that the PDS machines constituted gambling devices under the Hawai'i gambling statutes.

[10]    HRS § 712A-10(9)(1991) provides that an individual claiming seized property may request judicial review of a forfeiture:

> (9)    Any person claiming seized property may seek judicial review of the seizure and proposed forfeiture by timely filing with the attorney general a claim and bond to the State . . . .  In lieu of a cost bond, a claimant may file an in pauperis bond sworn on oath before a notary public . . . .  Upon receipt of the claim and bond, the attorney general shall notify the prosecuting attorney who may discretionarily continue to seek forfeiture by petitioning the circuit court for forfeiture of the property within forty-five days of receipt of notice that a proper claim and bond has been filed.  The prosecuting attorney may also elect to honor the claim in which case the prosecuting attorney shall notify the seizing agency and authorize the release

(continued . . .)

6

In response to PJY's request for judicial review of the forfeiture, on December 19, 2014, the prosecutor's office began judicial forfeiture proceedings by filing a verified petition for forfeiture in the circuit court pursuant to HRS § 712A-9. In the petition for forfeiture, the prosecutor's office asserted that "the subject property was initially seized for forfeiture on or about September 27, 2012" and then "re-seized for forfeiture on or about September 12, 2014". It was also asserted that the seized property was subject to forfeiture because the property was used in the commission of a covered offense. The prosecutor's office requested that the property be distributed to the attorney general in accordance with HRS § 712A-16(2) (2003).[11] PJY filed a motion to dismiss the verified petition for forfeiture. The prosecutor's office opposed the motion.

---

(. . . continued)

> of the seizure for forfeiture on the property or on any specified interest in it.

[11] Forfeited property is distributed according to HRS § 712A-16(2):

> (2) All forfeited property and the sale proceeds thereof, up to a maximum of three million dollars per year, not previously transferred pursuant to [subsection] (1)(a) of this section, shall, after payment of expenses of administration and sale, be distributed as follows:

(continued . . .)

The Circuit Court of the First Circuit ("circuit court") granted PJY's motion to dismiss the verified petition for forfeiture and granted in part PJY's alternative motion for summary judgment.[12]  The circuit court dismissed the verified petition because the prosecutor's office failed to comply with the time limitations under HRS § 712A-17[13] and HRS § 701-108(2).[14]

---

(. . . continued)

> (a) One quarter shall be distributed to the unit or units of state or local government [whose] officers or employees conducted the investigation and caused the arrest of the person whose property was forfeited or seizure of the property for forfeiture;
>
> (b) One quarter shall be distributed to the prosecuting attorney who instituted the action producing the forfeiture; and
>
> (c) One half shall be deposited into the criminal forfeiture fund established by this chapter.

[12]   The Honorable Randal K.O. Lee presided.

[13]   HRS § 712A-17 provides:

"Notwithstanding any other provision of law, forfeiture proceedings under this chapter may be commenced at any time within the period in which a criminal proceeding may be instituted for a covered offense pursuant to section 701-108."

[14]   HRS § 701-108(2)(e) provides:

> (2) Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation:
>
>      . . . .

(continued . . .)

The circuit court also granted summary judgment in part after concluding that there was no genuine issue of material fact as to the prosecutor's office's violation of this time limitation under HRS § 701-108(2) and that PJY was entitled to a judgment as a matter of law.  The State appealed.

**B.   ICA Decision**

The ICA vacated the circuit court's decision and remanded for further proceedings.  According to the ICA, the circuit court incorrectly interpreted Chapter 712A to require that both the administrative petition and the judicial petition be filed within the two-year statute of limitations delineated in HRS § 712A-17.  The ICA held that although the Prosecutor failed to file the judicial petition within the two-year statute of limitations, the petition was nevertheless timely because the administrative petition was filed within the statute of limitations.  Under this analysis, the ICA held that where a prosecuting attorney files a qualifying claim for forfeiture pursuant to HRS § 712A-9 and requests judicial review of an administrative petition, the prosecuting attorney may

---

(. . . continued)

> (e) A prosecution for a petty misdemeanor or
> parking violation must be commenced within two
> years after it is committed[.]

9

"discretionarily continue to seek forfeiture by petitioning the circuit court for forfeiture of the property[.]"  HRS § 712A-10(10) provides that "no duplicate or repetitive notice shall be required.  The judicial proceeding, if any, shall adjudicate all timely claims."  Reading these two provisions together, the ICA held that the judicial proceeding is a continuation of a preexisting administrative proceeding pursuant to HRS § 712A-9(1) and "bringing the administrative petition within the statute of limitations period satisfies that requirement."

Having determined that the prosecuting attorney did not violate the statute of limitations, the ICA considered the timing requirements of HRS §§ 712A-7 and 712A-9.  As interpreted by the ICA, these provisions require HPD to send a request for forfeiture to the prosecuting attorney within thirty days of seizure and require the prosecuting attorney to determine whether the property is likely subject to forfeiture pursuant to HRS § 712A-5 and, if so, to file the petition for forfeiture within forty-five days of the request.  The ICA asserted that the first seizure by HPD occurred on September 27, 2012; accordingly the ICA concluded that HPD failed to meet these statutory deadlines mandated by HRS §§ 712A-7 and 712A-9 because HPD failed to make reasonable efforts to give notice of seizure within twenty days to all parties who were known to have an

10

interest in the seized property.[15]  However, the ICA ruled that
the failure of HPD to file petitions to begin forfeiture
proceedings within forty-five days in accordance with HRS §§
712A-7 and 712A-9 was not sanctionable because those provisions
do not provide penalties for their violation. The ICA held that
"failure to comply with the internal deadlines contained in HRS
§ 712A will not serve as a bar for [a] petition brought within
the limitation provision continued in HRS § 712A-17."

Pursuant to HRS § 712A-17, forfeiture proceedings
must be commenced within the statute of limitations to file the
covered offense.  In the present case, the covered offenses were
misdemeanors.  Therefore, prosecution must have commenced within
two-years pursuant to HRS § 701-108(2)(e).  The ICA thus
concluded that the two-year statute of limitations contained in
HRS § 712A-17--rather than the statutory deadlines contained in
HRS §§ 712A-7(3)[16] and 712A-9(1)[17]--establish the time by which

---

[15]     If September 27, 2012 is the seizure for forfeiture date, HPD
took the actions required pursuant to HRS § 712A-7 and HRS § 712A-9 nearly
two years after the seizure by notifying the prosecutor's office.  On
September 19, 2014, a request for forfeiture was sent to the prosecuting
attorney.  The prosecutor's office filed a petition for administrative
forfeiture on September 22, 2014.

[16]     HRS § 712A-7 provides:

> (3) . . . Within twenty days after seizure for
> forfeiture the seizing agency shall make reasonable

(continued . . .)

11

HPD and the prosecutor's office must initiate forfeiture actions.  The ICA relied on United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993).  In Good, the United States Supreme Court found that, because the customs statute containing forfeiture timing requirements did not provide a remedy for the government's noncompliance, and because a statute of limitations already existed to prevent stale claims from being brought, the customs statute's forfeiture timing requirements were simply internal timing requirements that could not be enforced by the Court.  510 U.S. at 65.  The ICA found HRS Ch. 712A to be analogous to the customs statute at issue in Good.  The ICA

---

(. . . continued)

> efforts to give notice of seizure for forfeiture in the manner provided in section 712A-8(a) or 712-8(b) to all parties known to have an interest in the seized property.
>
> (4) In the event of a seizure for forfeiture under section 712-6, the seizing agency shall send to a prosecuting attorney a written request for forfeiture within thirty days, which shall include a statement of facts and circumstances of the seizure, the appraised or estimated value of the property, and a summary of the facts relied on for forfeiture.

[17]     HRS § 712A-9(1) provides:

"The prosecuting attorney shall determine whether it is probable that the property is subject to forfeiture and, if so, shall initiate administrative or judicial proceedings against the property within forty-five days of receipt of a written request for forfeiture from a seizing agency . . ."

stated that HRS Ch. 712A similarly lacks a remedy for noncompliance with the forfeiture timing requirements, and also provides a statute of limitations to prevent stale claims. The ICA characterized HRS §§ 712A-7 and 712A-9 as providing unenforceable internal timing requirements analogous to the customs statute in Good. Accordingly, the ICA concluded that the circuit court erred in its application of the time limitations of Section 712A-7 and 712A-9 to the September 27, 2012, seizure by HPD. The ICA vacated the circuit court's order granting PJY Enterprises, LLC's motion to dismiss the verified petition for forfeiture and/or in the alternative granting PJY's Enterprises, LLC's motion for summary judgment. Further, the ICA vacated the final judgment of the circuit court dated October 8, 2015 dismissing the case and remanded for further proceedings.

## II. Standard of Review

> The interpretation of a statute is a question of law reviewable de novo.
>
>> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Ka Paʻakai O Kaʻaina v. Land Use Comm'n, 94 Hawaiʻi 31, 41, 7 P.3d 1068, 1078 (2000) (internal quotation marks and citations omitted) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 160, 977 P.2d 160, 168 (1999)).

## III. Discussion

HPD seized PJY's seventy-seven machines on September 27, 2012, and took no action to inform Petitioner of the seizure, or request the prosecutor's office to seek forfeiture until it sent a request for forfeiture to the prosecutor's office on September 19, 2014--nearly two years after the initial seizure.[18] The ICA relied upon HRS § 712A-17 to conclude that the sole time limitation on the government's use of forfeiture is the statute of limitation applicable to the offense for which the forfeited evidence is to be used. HRS § 712A-17 states in pertinent part: "Notwithstanding any other provision of law, forfeiture proceedings under this chapter may be commenced at any time within the period in which a criminal proceeding may be instituted for a covered offense pursuant to section 701-108."

Under this analysis, the time limitations contained in HRS §§ 712A-7(4) or 712A-9(1) become merely internal deadlines

---

[18] The prosecuting attorney consequently did not initiate forfeiture proceedings until September 22, 2014.

14

with no prescriptive effect. PJY would have no recourse for the return of its property until the expiration of the two-year statute of limitations applicable to the underlying offenses of Gambling in the Second Degree in violation HRS § 712-1222 and Possession of a Gambling Device in violation of HRS § 712-1226. Thus, the failure of HPD, as the "seizing agency" to "make reasonable efforts to give notice of seizure for forfeiture . . . within thirty days of seizure," pursuant to HRS § 712A-7(3) and to "send to a prosecuting attorney a written request for forfeiture within thirty days" after the property was seized, pursuant to HRS § 712A-7(4); and the failure of the prosecuting attorney to "initiate administrative or judicial proceedings against the property within forty-five days" of receipt of HPD's request for forfeiture, pursuant to HRS § 712A-9(1) are of no consequence to the continued deprivation of PJY's property by HPD.

The legislative history of HRS Chapter 712A contradicts the ICA's proposition that legislative intent was to render unenforceable the forfeiture deadlines set forth in HRS §§ 712A-7 and 712A-9. In 1991, the legislature reinstated the timing requirements of HRS § 712A-9 to "require[] the prosecutor to initiate forfeiture proceedings within forty-five days of receipt of written request for forfeiture or to return the

15

property seized."  S. Stan. Comm. Rep. No. 1049, in 1991 Senate

Journal, at 1117.[19]  In so doing, the legislature made explicit

its intent that the remedy for noncompliance with HRS § 712A-9's

deadlines was the return of the property.

That the legislature intended the remedy for

noncompliance with the timing deadlines of forfeiture to be the

return of the property is further supported by the deadlines

applicable to an individual claiming an interest in forfeited

property.  Pursuant to HRS § 712A-10(4), a claim of interest

must be made within thirty days of notice of the seizure.[20]  HRS

---

[19]    In 1988 the legislature enacted Act 260 which amended HRS § 712A-9(1) to state:

> The prosecuting attorney shall determine whether it is probable that the property is subject to forfeiture and, if so, may cause the initiation of administrative or judicial proceedings against the property.  If, on inquiry and examination, the prosecuting attorney determines that the proceedings probably cannot be sustained or that justice does not require the institution of such proceedings, the prosecuting attorney shall notify the seizing agency, and as soon as practicable authorize the release of the seizure for forfeiture on the property or on any specified interest in it.

1988 Haw. Sess. Laws Act 260, § 9 at 461.

[20]    HRS § 712A-10(4) provides in relevant part:

> Persons claiming an interest in the property may file either a petition for remission or mitigation of forfeiture, or a claim and cost or in pauperis bond, but not both, with the attorney

(continued . . .)

§ 712A-10(4) does not explicitly prohibit a claim of interest after the thirty day deadline; however, it would be contrary to the intended purpose of the deadline to conclude that the State would not be subject to a claim of interest on the forfeited property until after the thirty day limitation stated in HRS § 712A-10(4).  Similarly, the logical consequence of the State's failure to commence forfeiture proceedings within the deadlines delineated in HRS §§ 712A-7[21] and 712A-9[22] is the return of seized property.

Finally, the ICA's reliance by on the United States Supreme Court's decision in Good to conclude that the deadlines enumerated in HRS § 712A-7 and § 712A-9 are internal deadlines and failure to comply with these deadlines "will not serve as a bar for a petition [for forfeiture]" is misplaced.  In Good, because the customs statute at issue did not provide a remedy

---

(. . . continued)

> general, within thirty days of notice by publication
> or receipt of written notice, whichever is earlier.

[21]    The seizing agency must also "send to a prosecuting attorney a written request for forfeiture within thirty days" after the property is seized.  HRS § 712A-7(4)(emphasis added).

[22]    Once the prosecuting attorney receives the written request, the prosecuting attorney "shall initiate administrative or judicial proceedings against the property within forty-five days."  HRS § 712A-9(1)(emphasis added).

17

for failure to comply with the provision, the Court interpreted the statute to be an internal guideline rather than one enforceable by the courts.  510 U.S. at 64-65.  The Court explained that, because the statute lacked a consequence for noncompliance, Congress impliedly left enforcement to the administering officials.  Here, the legislative history of HRS § 712A-9 explicitly provides that the seizing agency must return the seized property if the State fails to follow HRS § 712A-9.

## IV. Conclusion

In conclusion, the failure of HPD and the Prosecutor to comply with the twenty day and forty-five day statutory deadlines contained in HRS §§ 712A-7 and 712A-9 applicable to seizure of Petitioner's property require its return.  Accordingly, we vacate the ICA's July 31, 2017 Judgment on Appeal, and remand the case to the circuit court for further proceedings consistent with this opinion.

| Keith M. Kiuchi | /s/ Mark E. Recktenwald |
| for petitioner/claimant- | |
| appellee | /s/ Paula A. Nakayama |
| | |
| Kurt Y. Nakamatsu | /s/ Sabrina S. McKenna |
| for respondent/plaintiff- | |
| appellant | /s/ Michael D. Wilson |

